FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 JUN 29 AM 9:43
CLERK'S OFFICE
AT GREENBELT
BY BV DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

William M. Schmalfeldt, )
)
Plaintiff, )
)
vs. ) Case No.: No. 1:15-cv-01241-RDB
)
Patrick G. Grady, )
)
Defendant )

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P. 12(B)(2)**

Defendant Patrick G. Grady, without waiving any rights of jurisdiction, notice, process, service of process, or venue, hereby submits this Reply Memorandum in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. In Plaintiff's mislabeled opposition to that motion ("Reply to Defandant's [sic] Motion to Dismiss") (ECF 9) (the "Opposition"), Plaintiff makes it clear that his argument that Maryland has personal jurisdiction over Mr. Grady rests on a wrong-headed interpretation of Maryland's Long Arm Statute (MD. CODE, Cts. & Jud. Proc. § 6-103) and on Fourth Circuit Due Process jurisprudence, rather than any reliance on actual case law. As will be shown here, Plaintiff argues that the Maryland Long Arm Statute confers jurisdiction over Mr. Grady based on nothing more than several empty, conclusory allegations, which are not entitled to a presumption of truth (*see e.g. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009)). As such, he fails to establish that this court has personal jurisdiction.

## I.
## MARYLAND LACKS PERSONAL JURISDICTION OVER THE DEFENDANT BECAUSE DEFENDANT'S CONTACTS WITH THE STATE DO NOT SATISFY THE MARYLAND LONG-ARM STATUTE

In *Nichols v. GD Searle & Co.*, 991 F. 2d 1195, 1199 (4th Cir. 1993), the court states "A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process."[1] Plaintiff tries to avoid this by writing that

> Defendant says in his brief that Plaintiff's case is based entirely of claims [sic] under 28 USC [sic] §1332. That is incorrect, as [P]laintiff also cites 28 US [sic] §1367(a) and 28 USC 1391.

Opposition at 3. None of these citations relieve Plaintiff of the obligation to meet the requirements of the *Nichols* test. First, 28 U.S.C § 1391 deals with venue, which is relevant only after jurisdiction is established.[2] Second, presuming that Plaintiff meant to refer to 28 U.S.C. § 1367, the statute here deals with supplemental jurisdiction, which also is irrelevant before primary jurisdiction is established. Thus, Plaintiff must still satisfy the *Nichols* standard.

To do this, Plaintiff must show the court that his allegations meet the requirements of the long arm statute. Plaintiff makes no attempt to show that the facts alleged in the Complaint meet this burden; he is apparently aware that there is nothing alleged in the Complaint that would allow this Court to properly exercise jurisdiction. Rather, Plaintiff adds several new, unsworn

[1] *Nichols* mistakenly states that "Maryland's long-arm statute permits jurisdiction to the limits permitted by due process." Since then, the Maryland Court of Appeals has made it clear that its long arm statute is not coextensive with the scope of jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment. *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 892 A.2d 479, 493 n.6 (Md. 2006). Since this Court "must accept as binding the interpretation of Maryland's long-arm statute rendered by the Maryland Court of Appeals," *Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F. 3d 390, 396 (4th Cir. 2003), it appears that this dicta in *Nichols* is no longer valid.

[2] It is also notable that, even though this is not a Fed. R. Civ. P 12(b)(3) motion, venue is obviously improper under 28 U.S.C § 1391.

allegations in his Opposition, in particular: (1) that Mr. Grady completed one $5 transaction in Maryland, Opposition p.2; (2) that the "Krendler" character was allegedly "created specifically for the purpose of harassing Plaintiff," *id.*; (3) that Mr. Grady solicits and collects an unknown number of donations from unidentified Maryland residents, *id.*; (4) that Mr. Grady allegedly participated in some nebulous scheme to frame him for sending a letter to a third party, *id.*at 2-3; (5) that unknown and unnamed "correspondents...claim to live in Maryland," *id.* at 3; (6) that Plaintiff was in Maryland at the time he read the allegedly defamatory satires,[3] *id.*; (7) that Mr. Grady allegedly copied a joke from a Virginia lawyer who occasionally attended hearings involving Plaintiff in Maryland, *id.* at 4; (8) Plaintiff's paranoid suspicion that this same Virginia lawyer wrote Mr. Grady's motion to dismiss, *id.*; (9) that a Maryland resident delivered the motion to dismiss, *id.*; and (10) that Mr. Grady had by some means "directed the activity of...his secret 'Members-Only' website into the State of Maryland," *id.* at 5. Not one of these allegations were alleged in this case before Plaintiff made them in his Opposition, yet incredibly, Plaintiff preemptively scolds Mr. Grady for failing to address these allegations before he made them, stating that they are "reasons that Defendant does not even attempt to address." Id at 5. For the record, Mr. Grady is not blessed with clairvoyant abilities allowing him to predict what

[3] Although this motion is not based on Fed. R. Civ. P 12(b)(6), the writings at issue are obvious satires and thus cannot be subject to liability. In his Opposition, Plaintiff makes clear that he does not understand this principle, claiming for instance that "[c]alling Plaintiff a child molester, a child pornographer, a domestic abuser whose dying wife is a truck stop prostitute and an alcoholic, and a person infected with syphilis is not satire." Opposition at 6. Plaintiff seems to think that a statement can't be satire if he doesn't personally find it funny, or at least if he or someone he loves is the target of ridicule. This is directly contradicted by the holding of the Supreme Court in *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988). In that case, the Supreme Court confronted a satirical piece in which a famous minister was depicted as having been deflowered in a drunken sexual encounter with his mother in an outhouse. Undoubtedly, Rev. Falwell didn't think it was particularly funny, but that didn't prevent the Supreme Court from finding unanimously that such satire is protected speech. Even if Mr. Grady made every statement at issue in the complaint, there is no cause of action for hurt feelings resulting from being made fun of.

convoluted and illogical conspiracy theories Plaintiff might conjure up before he actually alleges them.

These allegations are not enough to confer jurisdiction. Most of them are simply conclusory, and as your honor noted in *Ohio Learning Ctrs., LLC v Sylvan Learning, Inc.*, Civil Action No. RDB-10-1932, at 3 (D. Md., April 24, 2012), "a court need not credit conclusory allegations or draw farfetched inferences in deciding jurisdictional disputes." Applying this rule to Plaintiff's new allegations, the claims (1) that "Krendler" was allegedly "created specifically for the purpose of harassing Plaintiff," *id.* at 2; (2) that Mr. Grady solicits and collects donations from Maryland residents, *id.*; (3) that Mr. Grady allegedly participated in a scheme to frame him for mailing a letter, *id.* at 2-3; (4) that unknown and unnamed "correspondents...claim to live in Maryland," *id.* at 3;[4] (5) that a Virginia lawyer wrote Mr. Grady's motion to dismiss, and (6) that Mr. Grady had somehow "directed the activity of...his secret 'Members-Only' website into the State of Maryland," *id.* at 5, are all conclusory allegations—in one case, a *conclusory suspicion.* So even if they were properly alleged as part of the original Complaint, they still would not be entitled to the presumption of truth.[5] *See, e.g. Haley Paint Co. v. E.I. Dupont De Nemours*, Civil

[4] Aside from any other problems with this allegation, this would be hearsay that doesn't fall into any known exception to the rule against the use of hearsay evidence.

[5] Plaintiff asserts in his Opposition that his allegations are entitled to the presumption of truth, *e.g.* Opposition at 6. So long as his allegations are not conclusory, this is true. But then he fails to understand—not once, but twice—why Mr. Grady doesn't bother denying that he is "Paul Krendler" or that he wrote the allegedly defamatory satires at issue in this case. Opposition at 4 and at 6. The obvious answer is that because those allegations are not conclusory in the Complaint, this Court must presume that they are true. But because the allegations have no bearing on the question of jurisdiction, there is no point denying them, regardless of what the actual truth is.

It is interesting that Judge Kramer's opinion in *Schmalfeldt v. Hoge, et al*, attached as Exhibit A, supports Mr. Grady's allegation that Plaintiff told Judge Kramer he was not sure who Paul Krendler is after all. As noted in the Motion to Dismiss, "Plaintiff appears to be saying one thing to this Court, and a different thing to another." Motion to Dismiss at 4, n. 1. Judge Kramer states

Action No.: RDB-10-0318 (D. Md., March 31, 2011) (applying *Iqbal's* pleading requirements as applied in determining if dismissal is called for under Fed. R. Civ. P. 12(b)(6), to the decision of whether dismissal is justified under 12(b)(2)). The rest of Plaintiff's allegations perform no better.

The only provisions in Md. Code Cts. & Jud. Proc. § 6-103 that Plaintiff cites to support personal jurisdiction are § 6-103(b)(1) and (b)(4). Opposition at 2. Plaintiff has apparently given up on alleging jurisdiction under (b)(3), recognizing the obvious futility of that argument given his admission that he neither knows nor appears to care where Mr. Grady was when he wrote the allegedly defamatory satires.[6] This is consistent with the decision in *Zinz v. Evans and Mitchell Industries*, 324 A.2d 140, 22 Md.App. 126 (Md. App., 1974) which held that even an allegedly defamatory letter sent from Georgia to Maryland was not sufficient to confer jurisdiction under statutory language virtually identical to subsection (b)(3). The *Zinz* court reasoned that while the injury caused by such letters would be felt in Maryland, the act or omission was committed in Georgia when the letter was written and sent. If a letter from an out-of-state jurisdiction purposefully sent into Maryland does not create jurisdiction under subsection (b)(3), then a website certainly is not sufficient either.

---

on page two of her opinion that "The [other Defendants] are referred to as 'Anonymous Bloggers aka Paul Krendler and Howard Earl' whose addresses are unknown." On top of that, a careful reading of Plaintiff's Opposition on pages 3-4 reveals that he is not even technically denying the allegation, although he is doing his best to *sound* like he is.

The best source of information on what was said at that hearing is a transcript or recording of that hearing. Mr. Grady has not yet obtained a copy of either one. However, when he receives it, he will file a brief supplement to this Reply in order to provide it.

[6] Plaintiff writes in Opposition at 3, that "Mr. Grady may well have been in Maryland, or Illinois, for all Plaintiff knows. The defendant wrote the things he wrote wherever he was when he wrote them." This statement lays his argument entirely to waste. In order to establish jurisdiction under § 6-103(b)(3), he must know.

Plaintiff tries to meet the requirements of (b)(1) by claiming in that "Defendant does indeed transact business in the state of Maryland" because Mr. Grady allegedly sold "'world book and e-book rights' to a portion of a blog post written by Grady's 'Krendler' persona" for the princely sum of five dollars. Opposition at 2. In doing so, the Plaintiff particularly overlooks § 6-103(a) which states that "If jurisdiction over a person is based solely upon this section, he [or she] may be sued only on a cause of action arising from any act enumerated in this section." As your honor noted in *Martynuska v. Nat'l Payment Relief, LLC* Civil Action No. RDB-14-0265, at 12 (D. Md., Aug. 22, 2014):

> With respect to whether the defendant "transacts any business or performs any character of work or service in the State," "[c]onsideration of personal jurisdiction under subsection (b)(1) necessarily invokes the limitation in subsection (a) that the cause of action arise from an act enumerated in (b)(1)," which "require[s] that some purposeful acts have been performed by the defendant in Maryland in relation to one or more elements of the cause of action." *Catalana v. Carnival Cruise Lines, Inc.*, 618 F. Supp. 18, 21 (D. Md. 1984), aff'd, 806 F.3d 257 (4th Cir. 1986) (citations, internal quotation marks, and alterations omitted).

In other words, it is not enough to allege that Mr. Grady transacted any business at all in order to satisfy § 6-103(b)(1). Rather, § 6-103(a) requires that the cause of action must arise out of such a transaction. Plaintiff has made no such claim, therefore a single five dollar transaction is not sufficient to confer jurisdiction under § 6-103(b)(1).

In a like manner, § 6-103(b)(4) states that

> A court may exercise personal jurisdiction over a person, who directly or by an agent...[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

These are similar to the requirements considered when a court must decide if it may exercise general jurisdiction over a defendant. Thus Plaintiff must establish that Mr. Grady (1) regularly does or solicits business in the State, (2) engages in any other persistent course of conduct in the State or (3) derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

First, Plaintiff makes no allegation at all that Mr. Grady derives substantial revenue from any goods, food, services, or manufactured products. The alleged sale of publishing rights is not covered because (1) the sale of mere rights is not included in the list, (2) there is no allegation that they were used or consumed in Maryland, and (3) five dollars is not "substantial revenue." It is a mere peppercorn. And Plaintiff fails to allege any other revenue of any kind from anything sold or consumed in Maryland or anywhere else. As a result, it cannot be said that personal jurisdiction can be exercised over Mr. Grady because he "derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."

Likewise, it cannot be said that Plaintiff—however clumsily—alleged that Mr. Grady regularly does or solicits business" in Maryland. For instance, as appears to be his standard, Plaintiff offers no information regarding *where* the alleged contract was made to sell publishing rights to Mr. Hoge at page 2 of his Opposition; he only states that one of the parties is a Maryland resident. Mr. Hoge might have travelled to Illinois to make the deal. Perhaps they met in Las Vegas, Hawaii or any of countless out-of-state jurisdictions. Similarly, his single allegation that Mr. Grady "solicits and collects donations from Maryland residents" is not sufficient. Laying aside the fact that these are conclusory allegations, "donations" are not normally considered "business." And once more, Plaintiff makes no claim that these unidentified Maryland residents were actually in Maryland when such solicitations of donations

or payments were made. One also must wonder how Plaintiff could believably pretend to know one way or the other. Finally, he does not specify how many donations were solicited or received. The use of the plural "solicits" and "collects" here implies an allegation of two solicitations and two collections. Combined with the five dollar sale of publishing rights, that amounts to five total alleged instances of soliciting or doing business—four of which could hardly be the exchange of goods, food, services, or manufactured products for money or like consideration that constitute business—nowhere near enough to meet the statutory requirement that Mr. Grady do so regularly.

Turning finally to the prong of the statute requiring that Mr. Grady "engage[] in any other persistent course of conduct" in Maryland, Plaintiff has failed to meet this requirement as well.

First, Plaintiff seems to believe that by filing a motion to dismiss Mr. Grady automatically submits himself to this jurisdiction. Plaintiff claims that Mr. Hoge, a Maryland resident, delivered Mr. Grady's motion to dismiss. But by that logic, if Mr. Grady had sent the same motion by U.S. Mail, it would likely have been delivered to this court by a Maryland resident as well, and the same can be said of any of the various courier services Mr. Grady might have hired. In any case, that is not an allegation that Mr. Grady engaged in any "conduct in the State," but rather that Mr. Hoge did so. He also "suspects" that a Virginia attorney named Aaron Walker "may have written the Defendant's Motion to Dismiss," as part of a bizarre attempt to assert jurisdiction by association.[7] That does not even rise to the level of a conclusory allegation—it is "conclusory suspicion." More to the point, if Mr. Grady hired a *Maryland*

---

[7] Plaintiff attempts to suggest this Court could exert personal jurisdiction over Mr. Walker by saying that Mr. Walker is "good friends" with Mr. Hoge (a Maryland resident) and that "Walker attends every legal proceeding involving Mr. Hoge." Even if that was enough to subject Mr. Walker to the personal jurisdiction of this Court (which it is not) it offers nothing to the question of whether this Court has personal jurisdiction over Mr. Grady. There is no such thing as jurisdiction by association.

attorney to represent him in this case, even that does not amount to consent to this jurisdiction. Such would amount to punishing a defendant for seeking legal counsel, and it is improper to even consider the idea in evaluating whether Mr. Grady has sufficient contacts with the state under § 6-103(b)(4).

There is only one other allegation with any bearing on the requirement of a persistent course of conduct in the State, and that is the fanciful notion that Mr. Grady borrowed a joke from the same Aaron Walker—namely, that the Plaintiff is so fat he must be transported about with forklift and flatbed truck. Plaintiff seems to assume that because two people make similar jokes, one must be borrowing from another. But in all frankness, Plaintiff is a very obese man, and the joke is rather obvious. One might suppose that if twenty thousand stand-up comics made jokes about Joan Rivers's many cosmetic surgeries, Donald Trump's comb-over, or Hillary Clinton's love of pantsuits, Plaintiff would assume that they were all working together, too. Sometimes jokes are so obvious that more than one person would think of them.

But even if it was proven that Mr. Grady ripped off Mr. Walker's writing, one is still left with the burning question: "Who cares?" Mr. Walker is not even alleged to be a Maryland resident; and upon information and belief, he lives in Virginia. How does any of this add up to a course of conduct *in Maryland?*[8] Excluding those contacts, there is no allegation of *any* conduct

[8] Plaintiff seems particularly incensed that Mr. Grady mentioned the "forklift" joke in his Motion to Dismiss, going so far as to state that the entire motion is "a thinly disguised effort by Grady to insult Plaintiff personally in a court filing." Opposition at 1. Plaintiff alleged in his complaint that somehow Mr. Grady had obstructed justice in the state of Maryland. The forklift joke was the only allegation that even related to a court proceeding in Maryland in the Complaint, so Mr. Grady felt it was necessary to point out that a joke like that did not amount to obstruction of justice. He had no idea that Plaintiff was referring to a conspiracy theory that didn't even appear in the Complaint. Further, Plaintiff should be advised that if he didn't want Mr. Grady to discuss the forklift joke, he shouldn't have made it part of the Complaint.

in Maryland that is not conclusory, let alone a "persistent course of conduct in the State" as required by§ 6-103(b)(4).

Therefore, Plaintiff has failed to allege sufficient facts to trigger any part of the Maryland long arm statute, and for that reason alone, this case should be dismissed for lack of personal jurisdiction.

## II.
## EVEN IF THE MARYLAND LONG ARM STATUTE HAD BEEN SATISFIED, THIS COURT CANNOT EXERCISE JURISDICTION UNDER THE DUE PROCESS CLAUSE

Even if the Plaintiff could meet the bare language of the long arm statute (and he cannot), the exercise of personal jurisdiction would be unconstitutional under the Fourteenth Amendment. That is, Plaintiff cannot establish that this Court can exercise either specific jurisdiction over Mr. Grady or general jurisdiction under the Due Process Clause.

First, Plaintiff has failed to establish specific jurisdiction. As your honor has previously explained:

> A court may exercise specific jurisdiction if (1) the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, that is, consistent with "traditional notions of fair play and substantial justice."

*Martynuska v. Nat'l Payment Relief, LLC* Civil Action No. RDB-14-0265, at 11 (D. Md., Aug. 22, 2014). The only allegation that any activity at all was directed into the state is the conclusory statement that the entries at The Thinking Man's Zombie website were somehow directed specifically into Maryland. Complaint at 5. Plaintiff does not explain *how* these blog entries were directed into Maryland, and one gets the sense that he feels that because these satires defamed him, it is somehow directed into Maryland. If that is indeed his theory, it is in direct

contradiction with the Fourth Circuit's decision in *Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002), which stated that the fact that defamatory articles were about a Virginian, was not enough to subject a person to personal jurisdiction in Virginia. Regardless of what meaning may be hidden under Plaintiff's conclusory allegations, they are still conclusory and not entitled to the presumption of truth. Therefore this Court cannot exercise personal jurisdiction under the Due Process Clause.

Nor will any theory of general jurisdiction support personal jurisdiction over Mr. Grady. In *Ohio Learning Ctrs., LLC v. Sylvan Learning, Inc.*, Civil Action No.: RDB-10-1932 at 5-6 (D. Md., April 24, 2012), your honor noted that:

> a court may...exercise general jurisdiction over a foreign defendant if "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. In other words, a court may exercise general jurisdiction over a defendant when the non-resident maintains "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; see also *Carefirst*, 334 F.3d at 397.

Even if this court were to take as true the non-conclusory allegations Plaintiff made in the Opposition (again, there is nothing alleged in the Complaint itself which speaks toward establishing jurisdiction) Plaintiff has not alleged nearly enough to meet the *Young* standard.

Plaintiff has made three non-conclusory allegations describing three forms of alleged contacts with Maryland. First, he claims that Mr. Grady sold partial publishing rights for five dollars to Mr. Hoge, a Maryland resident (recalling that Plaintiff does not allege that either party was actually in Maryland when the deal was completed). Second, he alleges that Mr. Grady apropriated a joke from a Virginia lawyer again without alleging that this lawyer was in Maryland when this *appalling* theft occurred. Finally, he claims that Mr. Hoge delivered the

motion to dismiss. In fact, let's just get ahead of the game right now and admit that this Reply is likely to be delivered by Mr. Hoge, by someone else living in Maryland or even by someone passing through the state. None of that rolls up into continuous and systematic contacts with Maryland.

It is also useful to note what your honor has *rejected* as insufficient contacts with the state when general jurisdiction has been asserted. For example, in *Ohio Learning Ctrs., LLC v. Sylvan Learning, Inc.*, Civil Action No.: RDB-10-1932 at 6 (D. Md., April 24, 2012), the plaintiff there argued that general jurisdiction was appropriate based on the following allegations:

> (1) Defendant Rohde is "very well acquainted with the executive leadership of Sylvan, with its headquarters located in Maryland;" (2) "Rohde, as a member of the [Franchise Owner's Association] Board, has quarterly meetings with the executive leadership of Sylvan at the Maryland headquarters;" (3) at some point, Rohde "spent a week at Sylvan headquarters in Maryland for 'Sylvan 101' training;" (4) Rohde owns a number of Sylvan franchises, and therefore makes regular monthly payments to Sylvan in Maryland; and (5) Rohde and his franchises are required to purchase supplies, such as books and promotional materials, from Sylvan in Maryland.

These contacts go well beyond the trivial contacts properly alleged in this case, yet your honor wrote that "it is clear that the infrequent and negligible contacts between the Defendants and the State of Maryland are not sufficient to establish general jurisdiction[.]" Id. at 7. If the far more substantial contacts were not sufficient in *Ohio Learning Ctrs.*, then the Plaintiff's allegations are most certainly not sufficient here.

While Plaintiff has failed to allege sufficient facts establish general jurisdiction, it is noteworthy that he attempts to cite case law on the subject:

> we conclude that a State may, consistent with due process, exercise judicial power over a person outside the State when that person (1) directs activity into the [forum] State, (2) with the manifest intent of engaging in business or other interactions within the State, and

> (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

Opposition at 5. This is the same citation Mr. Grady made in his Motion at 6. Plaintiff, however, fails to note the context provided by the two sentences which immediately follow his citation:

> Under this standard, a person who simply places information on the Internet ***does not*** subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity ***does not*** generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State. *Id.* (emphasis added)

*ALS Scan, Inc.*, 714. Indeed, the fact that the cited case was dismissed for lack of personal jurisdiction appears to have escaped Plaintiff's notice entirely. He has cited a case that *supports Mr. Grady's argument* while undercutting his own.

Therefore, Plaintiff has not established either specific or general jurisdiction within the parameters of the Fourteenth Amendment's Due Process Clause. In plainer terms, he argues that Maryland is the proper venue and jurisdiction "because I said so." He has failed in his obligation to present a *prima facie* case supporting Maryland jurisdiction.

## CONCLUSION

If this Court considers only the allegations of the Complaint, or if it allows the Plaintiff to supplement his complaint with new, non-conclusory allegations, the result is nonetheless the same. The Plaintiff has not met the requirements of Maryland's Long Arm Statute or the requirements of due process. There is no need for a hearing because this is not a challenge of

whether the there is sufficient evidence to support Plaintiff's proper allegations; this is a challenge as to whether Plaintiff has even properly alleged that jurisdiction exists in the first place. Therefore, this case should be decided on the pleadings and dismissed for lack of jurisdiction.

This does not go to the merits—however facially meritless this case is. And if Plaintiff was genuinely wounded (instead of merely feeling the slings and arrows of outrageous fortune upon on his overlarge ego and sense of entitlement), he still has a remedy: He can come to Illinois, where Mr. Grady can undoubtedly be subjected to general jurisdiction. In the end, Plaintiff is claiming that he has been somehow damaged by satires written by an Illinoisan. He is claiming to be entitled to a portion of that Illinoisan's fortune. The default state of affairs is that Mr. Grady's fortune belongs to Mr. Grady until and unless Plaintiff establishes a right to it. This is doubly important when the case concerns written expression, because the natural fear of vexatious and expensive litigation in a distant jurisdiction that the Plaintiff attempts to exploit here tends to create a chilling effect on protected speech. Accordingly, it is appropriate that Maryland law and the Federal Constitution typically places the burden of litigation—including the burden of travel—squarely on the shoulders of a plaintiff such as this.

WHEREFORE, Mr. Grady asks the Court to DISMISS the Complaint for improper jurisdiction pursuant to the Fed. R. Civ. P. 12(b)(2) and for other such relief as it may deem just and proper.

Date: 28 June 2015

Respectfully submitted,

Patrick G. Grady, *pro se*
1103 Chesapeake Court
Palatine, IL 60074
(847) 269-6948
Patrick.G.Grady@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on 28 June 2015, I served a copy of this Motion on William M. Schmalfeldt by First Class U.S. Mail.

Patrick G. Grady