FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JUL 15  AM 9: 44

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

CLERK'S OFFICE
AT GREENBELT

BY ___BU___ DEPUTY

| | | |
|---|---|---|
| WILLIAM M. SCHMALFELDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PATRICK G. GRADY, et al, | ) | |
| | ) | |
| Defendants. | ) | Civil Action No. 1:15-cv-01241 RDB |

**MOTION TO TERMINATE PLAINTIFF'S**
**IN FORMA PAUPERIS STATUS**
**AND DISMISS WITH PREJUDICE**
**AND MOTION REQUESTING AN ORDER**
**REQUIRING PLAINTIFF TO APPEAR**
**AND SHOW CAUSE**

COMES NOW David Edgren, *pro per*, a named but not yet served defendant in this case,

having appeared specially and without conceding or waiving any right to include, without limit,

any right of jurisdiction, venue, due process, or service of process, and hereby moves and

requests that the court terminate Plaintiff's current *in forma pauperis* (hereinafter, "IFP") status

based on Plaintiff having materially and substantially misled the court as to his actual economic

circumstances in his April 27, 2015, IFP motion (hereinafter, the "IFP Motion") by failing to

include certain financial resources at his disposal in the representations made in the motion

concerning his financial circumstances.  Further, I also hereby move and request that the court

issue an order directing Plaintiff to appear and show cause as to why he should not be

sanctioned under Fed. R. Civ. P. 11 for the aforesaid failure to truthfully provide the financial

information in his IFP Motion, in that said motion was signed by Plaintiff under a declaration

"under penalty of perjury that the information [provided] is true" and because the court then

relied on the IFP Motion to grant Plaintiff IFP status in this case. The factual background and

applicable law and argument are set forth following.

## FACTUAL BACKGROUND

Plaintiff, a resident of the State of Maryland, commenced this litigation, which alleges

various state law personal injury claims, by filing his original complaint (hereinafter,

"Complaint") against Defendant Grady, a resident of the State of Illinois, on April 29, 2015.

ECF 1. With the Complaint, Plaintiff filed the IFP Motion on the Maryland District's form used

for this purpose[1], alleging that he was indigent. ECF 2. On May 5, 2015, the court granted

Plaintiff's IFP motion (hereinafter "Current IFP Order") (ECF 3), this despite the fact that it, in

an order signed by Your Honor, had denied a previous IFP motion by Plaintiff made about three

months earlier in this court's Civil Action No. RDB-15-315. A copy of that order (hereinafter

"Denial Order") is at Exhibit "A" to this filing, and a copy of Plaintiff's February 2, 2015, IFP

motion filed in Civil Action No. RDB-15-315 is attached as Exhibit "B."

In the Denial Order, Your Honor found as follows:

---

[1]  D. Md. Form AO 239 (Rev. 12/13) "Application to Proceed in District Court Without
Prepaying Cost or Fees (Long Form).

> Plaintiff does not appear to be eligible to proceed as an indigent since his financial information shows his monthly income of $ 2,421.83 exceeds his stated expenses. Additionally, he owns real estate estimated at $10,000 and a motor vehicle. He also maintains a checking account containing $2,075.00.

Exhibit "A," p. 1.  Plaintiff's IFP Motion demonstrated only small changes in Plaintiff's financial circumstances over the preceding several months, mainly: 1) the reduction in his checking account balance from $2,075 in early February of this year to $845.56 just under three months later (*Compare* Exhibit "B," p. 2 with ECF 2, p. 2); and 2) Plaintiff's "Total Monthly Expenses" noted in the two IFP motions went from $1,862.50 (Exhibit "B," p. 5) a month to $1,635 (ECF 2, p. 5) over the same period, mostly because Plaintiff listed monthly expenses of $163 for "Recreation, entertainment, newspapers, magazines, etc." in February (Exhibit "B," p. 4) and $0 in April (ECF 2, p. 4), and $75 total monthly "Installment payments" in in February (Exhibit "B," p. 4) and $0 in April[2] (ECF 2, p. 4).  Deducting expenses from income on each motion, Plaintiff had $559.33 in remaining monies in the month of February, 2015, to go towards maintaining litigation (*see* Exhibit "B").  This was the amount upon which, along with counting the value of Plaintiff's automobile and mobile home, the court denied granting Plaintiff IFP status, explaining in the Denial Order that "[h]is monthly income of $ 2,421.83 exceeds his stated expenses." Exhibit "A," p.1.  Making the same calculation for April based on the IFP motion in the current case (ECF 2) and including the spouse's installment debt (*see* n. 2)

---

[2]  It could be that the $75 in total "Installment payments" noted in Plaintiff's column in February (Exhibit "B, " p.4) are the same debts as the $100 total  noted in his spouse's column in April (ECF 2, p. 4).  For the purposes of this motion, this is assumed to be the case.

Plaintiff had $680 in remaining monies in the month of April, 2015. This was $120.67 more than in February and with the same assets in the form of the automobile[3] and mobile home, yet this court granted his motion this time without explanation. *See* ECF 3.

On information and belief, Plaintiff has an adult stepson named Thomas J. (T.J.) Balcerak (hereinafter, "Balcerak"). Plaintiff has noted a number of times on the Internet over the past several years that Balcerak resides in Plaintiff's mobile home with Plaintiff and, up until June 17, 2015, Plaintiff's spouse Gail Schmalfeldt. *See* Plaintiff's Twitter post noting the death of Plaintiff's spouse, attached as Exhibit "C." Balcerak does not appear on either Plaintiff's IFP motion in Civil Action No. RDB-15-315 as a "person[] who relies on [Plaintiff] or [his] spouse for support" (Exhibit "B," p. 3) or under the same category on the IFP Motion (ECF 2, p. 3).

On October 27, 2014, while in the middle of an argument on the Internet, Plaintiff tweeted about Balcerak as follows: "[Y]ou mean the one with the great job, who pays rent and helps me and his mom? That one, troll?" *See* a copy of a Twitter post made on October 27, 2014, by Plaintiff[4] at Exhibit "D," attached. This admission establishes that, just a little more

---

[3] For some unexplained reason the value of Plaintiff's automobile decreased by $1,000 between February and April of 2015. *Compare* Exhibit "B," p. 3 and ECF 2, p. 3.

[4] As noted in my motion re Plaintiff's amended complaint at ECF 17, I, in preparing this filing, personally cut and pasted the screen captures into the pertinent exhibit page. I either secured the screen captures from Plaintiff's original postings on the Internet or from archives of such postings. The latter was necessary on a number of occasions, as Plaintiff has a long-standing habit of deleting any Internet content he creates over which he retains the control to do so after several weeks. It will be demonstrated to the court in further proceedings in this case

than four months before the February 2, 2015, IFP motion was filed by Plaintiff in Civil Action

No. RDB-15-315, Balcerak was paying rent to Plaintiff and his spouse, and contributing to the

household in other unspecified ways.  No income was noted coming from Balcerak by Plaintiff

on either the February IFP motion or the IFP Motion filed in this case under "Income from

rental property (*such as rental income*)."  *See* Exhibit "B," p. 1 and ECF 2, p. 1.  No income was

noted coming from Balcerak by Plaintiff on either the February IFP motion or the IFP Motion

filed in this case under "Other (*specify*)."  *See* Exhibit "B," p. 2 and ECF 2, p. 2.  Plaintiff does

not, in point of fact, assert anything in either IFP motion that even hints at Balcerak's existence

or to Balcerak's economic contribution to Plaintiff's household.  *See, generally,* Exhibit "B" and

ECF 2.  It is also noted that the numbers for Plaintiff's rent and other household expenses

generally line up with the same information that Plaintiff entered on his first IFP motion made in

the federal courts on May 27, 2014.  *See* May 27, 2014 IFP motion by Plaintiff attached as

Exhibit "E."

On July 6, 2015, Plaintiff stated in a podcast on the Internet that Balcerak was paying

one-half of the rent on Plaintiff's mobile home along with other household expenses.  *See* the

informal transcription of a portion of Plaintiff's July 6, 2015, podcast attached to this motion at

Exhibit "F."  In that podcast Plaintiff stated,

> Everything I need's right here.  I got a good roommate, my stepson.  I take care of
> the dogs during the day.  Everything works out.  *We split expenses right down the*

---

that Plaintiff does this in particular to avoid direct scrutiny of his Internet content when it
becomes involved in litigation.

*middle.* All is well.

Exhibit "F."

Plaintiff learned about Exhibit "D" and Exhibit "F" on July 14, 2015, when he read my

Objection to Acceptance by the Court of Amended Complaint and Motion to Strike Same and

Rescind Summonses with Exhibits "A"-"K" when it appeared on the court's electronic docket at

ECF 17[5]. He then emailed me as follows, in pertinent part:

> A tweet to a lowlife is not evidence of a fact, and my son started splitting the rent
> with me when his mother died.

and

> I dismiss you and you alone from the suit, with prejudice, you leave my late wife's
> son alone, right?

These emails, screen captured from my Gmail account, are attached to this motion as Exhibit

"G."

Assuming for the sake of argument that Plaintiff's admission in Exhibit "D" indicates

that Balcerak was paying one-half the rent and expenses on Plaintiff's mobile home on and after

October 27, 2014, these are deemed for the purpose of this motion to include the amounts noted

for "Rent or home mortgage payment (*including lot rental for mobile home*)," "Utilities

(*electricity, heating fuel, water, sewer, and telephone*)," "Home maintenance (*repairs and

upkeep*)," and "Homeowner's or renter's" insurance on p. 4 of the court's form application that

---

[5]   Exhibit "D" to this motion is Exhibit "J" to the Objection to Acceptance by the Court of
Amended Complaint and Motion to Strike Same and Rescind Summonses. Exhibit "F" to
this motion is Exhibit "K" to that motion.

Plaintiff filled out as the IFP Motion. *See* ECF 2, p. 4. These amount total $1,185. *Id.* One

half of that total would be $592.50. To the extent that Plaintiff was receiving that amount each

month from Balcerak, Plaintiff either had $592.50 in monthly income ($7,110 on an annualized

basis) he did not disclose in his IFP Motion or his rent and household expenses would have been

reduced by $592.50. Even if Balcerak was paying some lesser monthly amount, though, the fact

remains that Plaintiff either failed, on an application to the court completed under penalty of

perjury, to disclose this income or to correctly report the actual amount of his monthly expenses.

Following the approval of Plaintiff's IFP status in this case, the court issued a summons

for Defendant Grady (ECF 5). That summons was returned served on Grady on May 20, 2015,

and this litigation commenced. ECF 6. Defendant Grady filed a motion to dismiss on June 9,

2015 (hereinafter, "Motion to Dismiss"). ECF 7. The Motion to Dismiss was fully briefed by

June 29, 2015, and was thus ripe for ruling. ECF 9-12. On July 2, 2015, Plaintiff attempted to

file an amended complaint (hereinafter, "Amended Complaint"). This filing appears on the

PACER docket with various attachments at ECF 13. However, it appears that the clerk's office

determined that Plaintiff had failed to prepare the "redline" copy of the Amended Complaint

required under District of Maryland Local Rule (hereinafter, "LR") 103.6c) as this document is

noted on the docket as being filed four days later on July 6, 2015. The clerk's office then issued

summonses to Defendant Hinckley and myself the following day, July 7, 2015. ECF 15.

Both Defendant Grady and I have filed motions with this court objecting to the

acceptance of the Amended Complaint by the clerk's office and asking that it be struck based on

Plaintiff's non-compliance with various Federal Rules of Civil Procedure (hereinafter, "FRCP") and District of Maryland Local Rules.  We each have alleged prejudice and injustice resulting from the filing of the Amended Complaint.  Defendant Grady's motion appeared on the docket on July 13, 2015, and is ECF 16.  My motion to strike Plaintiff's amended complaint and attached exhibits is at ECF 17.

**LAW AND ARGUMENT RE
MOTION TO TERMINATE PLAINTIFF'S
IN FORMA PAUPERIS STATUS
AND DISMISS WITH PREJUDICE**

Federal courts may, as this court has in the instant proceeding, allow a litigant to prosecute a civil action without paying the usual required fees if the individual submits an affidavit containing a statement of his or her assets and demonstrating that he or she cannot afford to pay the required fees.  28 U.S.C. § 1915(a)(1).  The *in forma pauperis* (hereinafter "IFP") statute is intended to ensure that indigent persons have equal access to the judicial system by allowing them to proceed without having to advance the fees and costs associated with litigation.  *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981).  An impoverished plaintiff does not have to prove that he or she is "absolutely destitute to enjoy the benefit of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).  Rather, an affidavit to proceed IFP is sufficient if it states that one cannot, because of his or her poverty, afford to pay for costs of litigation and still provide for the necessities of life.  *Id.*

However, if a court determines at any time that the allegation of poverty made in an IFP application is "untrue," then the court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(A)[6] (*emphasis added*).  Thus, a number of the various Circuit Courts of Appeal have found that

---

6   Under 28 U.S.C. § 1915(e)(2), "the court shall dismiss the case at any time if the court determines that - (A) the allegation of poverty is untrue; or (B) the action or appeal - (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

dismissal is mandatory if the court concludes that an applicant's allegation of poverty is untrue. *Castillo v. Blanco*, 330 F. App'x 463, 466 (5th Cir. 2009) (*unpublished*); *In re Sekendur*, 144 F. App'x 553, 554-55 (7th Cir. 2005) (*unpublished*); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002); *Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998). A recent unpublished opinion of the 4th Circuit, *Emrit v. Bank of America*, while not binding precedent, reaches the same conclusion. ___ F.Appx.___, 2014 WL 1492721, at *1 (4th Cir. 2014) (*unpublished*). Several District Courts in the 4th Circuit and in the D.C. Circuit have also reached the same conclusion. *Johnson v. Next Day Blinds Corp.*, WMN-09-2069, 2012 WL 2871418, at *2 (D. Md. 2012); *Staten v. Tekelec*, Nos. 5:09-CV-434-FL, 5:10-CV-180-FL, 2011 WL 2358221, at *1 (E.D.N.C. June 9, 2011); *Berry v. Locke*, No. 1:08cv697 (JCC), 2009 WL 1587315, at *5 (E.D. Va. June 5, 2009), *appeal dismissed*, 357 F. App'x 513 (4th Cir. 2009) (*unpublished*); *Oquendo v. Geren*, 594 F. Supp. 2d 9, 11 (D.D.C. 2009)[7]. This is supported by the plain text of the statute, which uses the mandatory term "shall" as opposed permissive language such as "may."

---

[7] *But see*, e.g., *Hobbs v. Cnty. of Westchester*, No. 00 Civ. 8170 (JSM), 2002 WL 868269, at *1-2 (S.D.N.Y. May 3, 2002) (issue of whether an action should be dismissed in the face of an untrue allegation of poverty is still addressed to the discretion of the district court) and cases cited. However, mandatory dismissal in such a situation appears to be by far the majority position, and, as noted, district courts within the Fourth Circuit have embraced this view. *See Johnson*, 2012 WL 2871418, at *2; *Staten*, 2011 WL 2358221, at *1; *Berry*, 2009 WL 1587315, at *5.

It is presumed that Plaintiff will assert that his *pro se* status, unfamiliarity with the law, and his Parkinson's Disease and other emotional infirmities should excuse his omissions from his IFP motion, which is at ECF 2. However, inaccuracy based on ignorance or mental stress is not excusable in formal, sworn court filings which explicitly warn of the potentially serious consequences of the false statement. *See Bell v. Dobbs Int'l Serv.*, 6 F. Supp. 2d 863, 865 (E.D. Mo. 1998). "This is particularly so where the omitted information is of such significant magnitude." *Id.* In addition, any contention by Plaintiff that he was unable to understand the IFP application is belied by the explicit language of the form, the most important examples being the form's express inquiry concerning amounts paid for rent and household expenses. *See Id.; Mullins v. Hallmark Data Sys.*, LLC, 511 F. Supp. 2d 928, 942 (N.D. Ill. 2007) ("The IFP form[] clearly and unambiguously asks questions in plain English on a form designed for use by non-lawyers."). Plaintiff's contention is further belied by the fact that he has repeatedly demonstrated his ability to navigate the federal court system over the past year and a half. He has conducted legal research and submitted numerous pleadings[8]. As a result, he cannot credibly claim that he was unable to understand the language of the IFP form.

This court is urged to find Plaintiff's omissions regarding income to him on his IFP motion do not constitute a minor technicality. Starting on p. 19 of this filing, I move and request that Plaintiff be ordered to appear and show cause as to why he should not be

---

[8] Civil Action No. CCB-14-1685, Civil Action No. RDB-15-315 and the instant case, Civil Action No. RDB-15-1241.

sanctioned under Fed. R. Civ. P. 11 based upon has having perjured himself in completing and

filing the IFP Motion. Plaintiff's failure to list income on his financial affidavits is a serious

matter, and his omissions are critical. Even if the Plaintiff's assets were not liquid at the time

the IFP motion was submitted, the benefit of filing IFP was not intended to allow individuals

with significant real and personal property interests to avoid paying a filing fee of $400.00 in

commencing a federal court case and paying subsequent costs[9]. In filing the IFP affidavits and

---

[9] Through his IFP status Plaintiff is insulated from the costs of service as well. He started this
case with one defendant. His amended complaint purports to add seven more. Plaintiff has
threatened to add numerous other people to this litigation, at one point threatening to sue
"everybody." See screen captures of Plaintiff's Internet postings attached to this motion at
Exhibit "H." By proceeding as an IFP litigant, Plaintiff is also insulated from the effect of
this District's LR 103.4 Security for Costs which provides:

> Any party against whom affirmative relief (other than a compulsory counterclaim)
> is filed may file a motion requesting that the party seeking the affirmative relief
> give security for costs if that party is not a resident of this District. Upon the filing
> of the motion, the Court shall issue a show cause order to the party seeking
> affirmative relief. A party who does not show cause why such security should not
> be required shall deposit with the Clerk on the date that the show cause response is
> due or on such later date as may be set by the Court the sum of $150 or such
> higher amount as the Court determines is appropriate. The Court may dismiss the
> claim of a party who fails to deposit the required security. This Rule shall not
> apply to any party proceeding in forma pauperis or as a seaman under 28 U.S.C. §
> 1916.

LR 103.4. Plaintiff has sued on what will be argued are frivolous and non-litigable claims
now seven defendants for one-half million dollars apiece. Each defendant could be
anticipated, if this case would go to trial, to accrue many thousands of dollars in costs
defending against the Plaintiff's action. The three current non-pseudonymous defendants live
as far from the court as Alaska (the other two live in Illinois and Massachusetts). Plaintiff
has voluntarily dismissed or had ordered dismissed his two previous federal lawsuits (CCB-
14-1685 and RDB-15-315) advancing the same sort of ludicrous claims presented in the

signing them under penalty of perjury, Plaintiff swore that he was so destitute that it would not

be reasonable to expect him to pay the filing fees. "By omitting the substantial assets that [he]

owns from the application[s], [plaintiff] cast the burden of payment onto the public. That action

took advantage of the Court and the public purse." *Berry*, 2009 WL 1587315, at *6.

Other courts have dismissed lawsuits in situations where the plaintiff omitted information

about income and assets from an IFP application. For example, in *Mathis v. New York Life Ins.

Co.*, No. 95 C 2270, 1996 WL 473430, at *1 (N.D. Ill. Aug. 16, 1996), *aff'd*, 133 F.3d at 546

(7th Cir. 1998), the applicant failed to disclose approximately $14,000 of equity in his home,

explaining that he did not know how to include it in the IFP application because his home was

subject to liens. Despite the fact that he was unemployed, had a car worth just $500 and only

$300 in his bank account, and was "'barely'... able to live and avoid foreclosure on his home,"

(*Mathis*, 133 F.3d at 547), the district court dismissed the case with prejudice and the Seventh

Circuit Court of Appeals upheld the dismissal. *See also Romesburg v. Trickey*, 908 F.2d 258,

259-60 (8th Cir. 1990) (upholding district court's dismissal of action with prejudice where

plaintiff failed to disclose that he owned at least four apparently unencumbered lots, despite his

assertion that the property was worth only $5000); *Mullins*, 511 F. Supp. 2d at 930 (case

dismissed with prejudice where plaintiff omitted information regarding almost $20,000 in salary

---

action before this court due to defects that should have been apparent to even an
unsophisticated student of federal legal procedure. Given his IFP status, he can simply walk
away and say "nevermind" leaving a trail of people who are damaged, perhaps even
economically devastated in his wake.

and interests in certain real property). Plaintiff's omissions in his IFP motion amount to a material misrepresentation of the state of his finances, and they compel the court to conclude that plaintiff's allegations of poverty are untrue. As a result, this case must be dismissed.

The court must further consider whether plaintiff's actions should be dismissed with or without prejudice. *See, e.g.*, *Sekendur*, 144 F. App'x at 555 (court faced with a false affidavit of poverty may dismiss with prejudice in its discretion). "A dismissal with prejudice for an untrue allegation of poverty, as opposed to a dismissal without prejudice or some other sanction, is appropriate only when the applicant intentionally misrepresented his or her financial condition, acted with bad faith, and/or engaged in manipulative tactics or litigiousness." *Staten*, 2011 WL 2358221, at *2; *see also Mathis*, 133 F.3d at 547-48; *Lay v. Justices*, 811 F.2d 285, 286 (5th Cir. 1987); *Camp v. Oliver*, 798 F.2d 434, 438-39 (11th Cir. 1986). However, appellate courts in many of the circuits have affirmed dismissal with prejudice when the trial court concluded that the plaintiff knowingly provided inaccurate information on his IFP application. *Mathis*, 133 F.3d 546; *Thomas*, 288 F.3d 305; *Attwood v. Singletary*, 105 F.3d 610, 612-13 (11th Cir.1997) (*per curiam*); *Romesburg*, 908 F.2d at 260; *Thompson v. Carlson*, 705 F.2d 868 (6th Cir.1983) (*per curiam*).

An individual's familiarity with the IFP system may be considered in determining whether he or she has acted in bad faith. *See, e.g.*, *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 469 (S.D.N.Y. 2004). The court should note that plaintiff has previously filed other actions in this district and has submitted altogether three IFP motions. *See* n. 8, *supra* at p.

-14-

11. These various IFP motions demonstrate that Plaintiff does in fact understand the IFP form and, following the denial of his previous IFP application in this same court[10] only a little less than three months earlier, raises at least the reasonable inference that his IFP motion filed in the case now before this court was made in bad faith.

Plaintiff has made a detailed accounting of his monthly expenses on his current IFP motion as required on the form of motion used in the federal courts. These consist of items such as rent, cost of utilities, food, clothing, laundry, entertainment, and medical and dental expenses. However, on his IFP motion, Plaintiff has failed to include substantial monthly income from his stepson in that the stepson shares the rent and other household expenses, a fact Plaintiff has asserted on the Internet both before and after he failed to declare this income to him (or, alternatively, show reduced amounts for rent and expenses). *See* Exhibit "D" and Exhibit "F". By omitting this information, Plaintiff understated his financial resources, on information and belief, by $592.50 per month. *See* calculation of this figure on p. 6-7, *supra*. The court should find itself extremely troubled by Plaintiff's failure to disclose this information, either on the

---

10 Civil Action No. RDB-15-315. *See* Exhibit "A." As noted *supra* on p. 3 of this motion, in pertinent part that order reads:

> Plaintiff does not appear to be eligible to proceed as an indigent since his financial information shows his monthly income of $ 2,421.83 exceeds his stated expenses. Additionally, he owns real estate estimated at $10,000 and a motor vehicle. He also maintains a checking account containing $2,075.00.

Exhibit "A," p. 1. The court dismissed RDB-15-315 in that order because Plaintiff sued a fellow resident of Maryland and thus destroyed the diversity jurisdiction his federal court claims relied upon.

current IFP motion or the one filed about three months previously in Civil Action No. RDB-15-315. This pattern of conduct should be found to demonstrate a conscious intent to conceal assets that would have disadvantaged Plaintiff's applications to proceed without prepaying a filing fee and subsequent costs.

Plaintiff will almost certainly argue that his case should not be dismissed with prejudice because, at the current time, he remains impoverished despite the addition of his stepson's contribution to rent and household expenses. This court should not agree that Plaintiff is so impoverished. The death of Plaintiff's spouse on June 17, 2015, left him with an anticipated life insurance payment pending his receipt of the death certificate and the ability to immediately liquidate his automobile, which he announced on the Internet he was selling. *See* screen captures re the life insurance and vehicle attached as Exhibit "I" and an informal transcription of a portion of Plaintiff's July 6, 2015, podcast at Exhibit "J." Plaintiff has said on the Internet that he is going to use the proceeds from the sale of the car to hire counsel and engage in more litigation[11]. *See, e.g.,* a screen capture of an Internet posting by Plaintiff attached at Exhibit "L" and an informal transcription of a portion of an Internet podcast by Plaintiff on July 6, 2015, attached with the online link at Exhibit "M." It is noted that Plaintiff, on sale of the vehicle, will

---

[11] Once Plaintiff had been made aware that selling an asset taken into account by this court in determining his IFP status might not be a good idea, he changed his story and now says that he is giving the vehicle away. *See* screen capture of July 11, 2015, Twitter post attached as Exhibit K. I urge the court to agree that Plaintiff should not be allowed to dispose of an asset he could have liquidated for $5,000 (*see* ECF 2, p. 3.) by giving it away while retaining his IFP status.

also save the amounts noted on his IFP motion filed in this case that he currently expends for title and registration, auto insurance, fuel and maintenance. *See* ECF 2, p. 4. This would amount to $100 each month based on the information provided by Plaintiff. *Id.* There is also evidence that Plaintiff has made substantial expenditures, particularly in connection with his podcast, since the death of his spouse. *See* evidence of $99 expenditure per week for Plaintiff's new account with "LA Talk Radio" at Exhibit "N."

Moreover, even if the court were to accept plaintiff's anticipated argument that he was in any event when he filed the IFP Motion and continues to be impoverished,

> [T]o dismiss without prejudice where an applicant intentionally lies on an IFP form would encourage the very perjury Congress sought to deter in § 1915. . . .
>
> It would accord to *in forma pauperis* applicants a right to lie and in practical application would negate the 1996 amendment to § 1915. . . .
>
> Perjury is a fraud on the court. It strikes at the heart of the integrity of the judicial system and is incompatible with the values underlying any system of justice. *See United States v. Mandujano*, 425 U.S. 564, 576, 96 S. Ct. 1768, 48 L. Ed. 2d 212 (1976); *United States v. Kennedy*, 372 F.3d 686, 695 (4th Cir. 2004). It is no more acceptable in the context of cases like this than it is in any other setting.

*Mullins*, 511 F. Supp. 2d at 940, 941, 942-43. "Nothing in § 1915 permits an applicant, even one who genuinely is unable to afford to pay the filing fee, to pick and choose what financial information to include on the *in forma pauperis* application." *Staten*, 2011 WL 2358221, at *2.

Here, the magnitude of plaintiff's omissions, the absence of a credible "innocent" explanation for these omissions, and his previous IFP filings all point toward "conscious or intentional acts or omissions" on his IFP applications in RDB-15-315 and in the instant case.

*See Id.* (*citation and internal quotation marks omitted*). The court should simply not accept Plaintiff's anticipated assertions that these omissions were an innocent mistake. It is noted that Plaintiff did not simply understate his financial condition due to an innocent misunderstanding. It is contended that the complete evidence will show that critical material facts were purposefully omitted from the current IFP motion order to mislead and defraud the court as to plaintiff's poverty status. "The opportunity to proceed *in forma pauperis* is a privilege provided for the benefit of indigent persons and the court system depends upon the honesty and forthrightness of applicants to ensure that the privilege is not abused." *Chung v. Dushane*, No. 03 C 5955, 2003 WL 22902561, at *2 (N.D. Ill. Dec. 9, 2003), *aff'd sub nom.*, *Chung v. KPMG LLP*, 104 F. App'x 576 (7th Cir. 2004) (unpublished).

Given the facts of the present case, and pursuant to the clear language of 28 U.S.C. § 1915(e)(2)(A), this case must be dismissed, and should be dismissed with prejudice as a sanction for Plaintiff's attempt to deceive the court. As discussed *supra* on p. 5 of this motion, this is not the first IFP motion where Plaintiff omitted this information, thus demonstrating a course of conduct intended to deceive the court. *See Igbinadolor v. TiVo, Inc.*, Civ. A. No. 1:08-CV-2580-RWS, 2009 WL 3253946, at *1 (N.D. Ga., Oct. 6, 2009) (fact that plaintiff perpetrated this fraud upon the Court in more than one case warrants the sanction of dismissal with prejudice). The court should accordingly dismiss this action with prejudice as an exercise of the court's discretion having given due consideration of the severity of such a sanction, but in view of the seriousness and scope of the information omitted by Plaintiff from the IFP Motion.

-18-

## LAW AND ARGUMENT RE
## MOTION FOR SHOW OF CAUSE

FRCP Rule 11 requires that any filing presented to the court carries with it a certification by the attorney or *pro se* litigant making the filing that, "[t]o the best of the person's knowledge, information, and belief, [the filing] is not being presented for any improper purpose…". FRCP 11(b)(1). The Maryland District's form "Application to Proceed in District Court Without Prepaying Cost or Fees" places the signature of the person filing the completed form as an IFP motion under the words,

> I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested. I declare under penalty of perjury that the information below is true and understand that a false statement may result in a dismissal of my claims.

ECF 2, p. 1. As noted *supra* on p. 17,

> Perjury is a fraud on the court. It strikes at the heart of the integrity of the judicial system and is incompatible with the values underlying any system of justice. *See United States v. Mandujano*, 425 U.S. 564, 576, 96 S. Ct. 1768, 48 L. Ed. 2d 212 (1976); *United States v. Kennedy*, 372 F.3d 686, 695 (4th Cir. 2004). It is no more acceptable in the context of cases like this than it is in any other setting.

*Mullins*, 511 F. Supp. 2d at 940, 941, 942-43.

On the 27th of April, 2015, Plaintiff signed his name to the IFP Motion. He did not include on the form on which the motion appears income to him, or alternatively a reduction in listed expenses based on Balcerak, his stepson, paying to him a sum believed to be $592.50 per month based on Plaintiff's own admissions. *See* Exhibits "D" and "F" to this motion. Even if the amount is demonstrated to be less, Plaintiff still did not disclose it and perjury is perjury,

regardless of the sum involved. *See Oquendo*, 594 F. Supp. at 11 (noting applicability of FRCP 11 to untruthfulness on IFP application).

Based on Plaintiff's apparent violation of FRCP Rule 11, I would be intending to file a motion for sanctions under FRCP 11(c). However, I request that the court at this time issue an order requiring, at a date set in the court's convenience, Plaintiff to appear and show cause as to why sanctions should not be imposed. I further request in advance of that hearing that Plaintiff be ordered to serve on each of the named defendants copies of his cancelled checks and bank deposit records dated between the dates of October 1, 2014, and July 15, 2015, with accompanying bank statements for all banking accounts Plaintiff had open, whether savings or checking or in some other form, and without regard to whether it was an account held by plaintiff in his sole name or with a co-owner or owners, by U.S. Mail, First Class, deposited for delivery at least ten days before the date the hearing is set. It is also requested that the court would issue a subpoena requiring the appearance at the hearing of Thomas J. Balcerak. Should the court grant this motion and set a date for the show cause hearing, a completed form of subpoena so requiring Balcerak's attendance at the hearing will be presented to the clerk's office by myself or by my designee for issuance.

It is finally requested, in the event that the court finds based on the arguments set forth *supra* starting on p. 9 in my motion to terminate Plaintiff's IFP status and to dismiss the case that dismissal of this action is warranted, either with or without prejudice, that such a dismissal

would be held in abeyance through the time of the show cause hearing and the ruling on any

subsequent motion for sanctions

## CONCLUSION

I have moved the Honorable court for termination of Plaintiff's IFP status and for

dismissal of this case.  I have requested further that the dismissal be with prejudice as to all of

Plaintiff's claims made against all named defendants, whether served or unserved at the time of

the court's ruling.  I believe that there is a proper basis in the relevant facts and in the law I have

cited in argument for this relief and I request that same be granted.

I have also moved the court to require that Plaintiff be ordered to appear and show cause

as to why he should not be sanctioned in connection with his apparent perjury in his IFP Motion

filed in this case.  As with the other motion, I believe that there is a proper basis in the relevant

facts and in the law I have cited in argument for this relief and I request that this motion be

granted as well.

DATED at Wasilla, Alaska this 14th day of July, 2015.

David R. Edgren, *pro per*
1150 S. Grantham Rd.
Wasilla, Alaska  99654
(907) 355-5697
davidredgren@gmail.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

WILLIAM M. SCHMALFELDT,            )
                                   )
            Plaintiff,             )
                                   )
vs.                                )
                                   )
PATRICK G. GRADY, et al,           )
                                   )
            Defendants.            )        Civil Action No. 1:15-cv-01241 RDB
_____)

### CERTIFICATE OF SERVICE

COMES NOW David Edgren, *pro per*, a named but not yet served defendant in this case,

having appeared specially and without conceding or waiving any right to include, without limit,

any right of jurisdiction, venue, due process, or service of process, and by my signature affixed

to this document below hereby certifies that, on the 13th day of July, 2015, I served true and

correct copies of my motion to terminate Plaintiff's IFP status and dismiss the case and motion

for order for Plaintiff to appear and show cause with Exhibits A-N attached  and this certificate

of service filed with this court on Plaintiff to his residence address at 6636 Washington Blvd.,

Lot 71, Elkridge, MD  21705 by personally placing same in the First Class mail of the United

States Postal Service with proper postage affixed.

DATED at Wasilla, Alaska this 14th day of July, 2015.

David R. Edgren, *pro per*
1150 S. Grantham Rd.
Wasilla, Alaska  99654
(907) 355-5697