**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| **WILLIAM M. SCHMALFELDT, SR** )<br>)<br>**Plaintiff** )<br>)<br>v.     )  Civil Action No. 1:15-cv-01241RDB<br>)<br>)<br>**PATRICK G. GRADY, et al** )<br>)<br>**Defendants** ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT DAVID EDGREN'S AND, BY ADOPTION, DEFENDANT SCOTT HINCKLEY'S MOTION TO TERMINATE PLAINTIFF'S IN FORMA PAUPERIS STATUS AND DISMISS WITH PREJUDICE AND MOTION REQUIRING AN ORDER REQUIRING PLAINTIFF TO APPEAR AND SHOW CAUSE**

COMES NOW Plaintiff William M. Schmalfeldt, Sr, Pro Se, to reply to Defendanst Edgren's and (by adoption) Scott Hinckley's Motion to Terminate Plaintiff's In Forma Pauperis Status and Dismiss with Prejudice and Motion Requiring an Order Requiring Plaintiff to Appear and Show Cause.

**DISCUSSION**

1. Defendant David Edgren is a retired attorney dwelling in Wasilla, AK. He is not held in high esteem according to most of the attorney rating services one can find online naming him and rating his abilities.

2. As a retired attorney, Edgren should know the penalties for extortion. Plaintiff alleges that the Defendant's motion arises from the fact that Plaintiff refused to accede to Defendant's demand that he drop the instant case.

3.      Defendant made his extortionate demand in an e-mail exchange (Ex. A) with Plaintiff that began on July 13, 2015.

4.      The first whiff of extortion comes in Edgren's email to Plaintiff, received 12::21 pm ET on July 13, 2015, which reads as follows:

> Bill: I had seriously weighed simply going ahead and rejecting your latest counteroffer with a terse "Not Accepted," but since a few hours remain and since you have been courteous to me in our email exchanges I am going to respond one last time in kind.
>
> I am not agreeable to dismissing the litigation "without prejudice" as that defeats the entire purpose of my offer. My intention was to bring all this stuff to a halt, as of today, and start with a clean slate. You'll have achieved making me withdraw from the field, you will have protected yourself from claims by my son, you will have effectively killed off Billy Sez, you will have kept an angry judge from dismissing your lawsuit outright and possibly imposing significant sanctions against you over the IFP issues. Hell, I am even willing to throw in a written apology, which you can publish as you would see fit. It doesn't make any difference to me- I won't ever be reading your Twitter feed or blog again, and I have the self-discipline to keep that promise.
>
> If this madness is not brought to a final end by you in dismissing it with prejudice as to everyone today, here is the first of several things you will see from me on Pacer this week:
>
> https://www.dropbox.com/s/iszm4troxipyq0i/Objection%20and%20Motion%20re%20Amended%20Complaint%20and%20Summonses%20Final%20As%20Filed.pdf?dl=0
>
> You can render that moot, Bill, by accepting my offer and dismissing the case. I won't tell you again that it is the best thing you can do, since I just did.
>
> I don't know when the clerk's office closes, either 4:30 or 5:00 p.m. Eastern Time. I would expect to either look at the docket on PACER or receive a copy of a file-stamped dismissal filing from you at that time. That leaves somewhere around four hours for you to act. If I see confirmation that you have accepted my offer and dismissed, my apology will be immediately forthcoming. If not, I will finalize preparing the IFP motion to show cause and start work on my son's third-party complaint.

2

*Thank you, again one last time, for carefully considering these matters.*

5. Following his first extortionate threat to file the above threatened motion (ECF 17) if Plaintiff did not drop his complaint, with prejudice, against all defendants, Edgren upped the extortion level by threatening to drag the son of Plaintiff's recently deceased wife into the litigation in an e-mail received by Plaintiff on July 14 at 4:45 pm, which read:

> *Bill, I just don't know what to say. It's Wednesday and you have dismissed nobody. Even though my offer has expired I continue to talk with you.*
>
> *If you didn't like my filing that showed up on the docket today (which I think is pretty tame and straightforward- it doesn't disparage you, it simply points to things you have written or said and says you- and the court- didn't follow the rules) you are going to hate what will show up Friday. As I said, I am going after your IFP status <em> based on things you have written or said or done, and I feel on fairly firm ground in saying that there may well be grounds for dismissal of the entire case there. I will certainly argue for that, and for other things. But this isn't personal, Bill. I'm simply doing what lawyers do in aggressively protecting a client's interests. You don't want to run that risk- dismiss me with prejudice so I can't come back. Of course, you should dismiss all the other litigants too, but you've made it clear that you require things from them that I'm sure they are not going to give you. Or better yet, dismiss all the others and litigate with me only. That's a fair fight. Two 60+ disabled guys duking it out, <em>mano a mano</em>. I know a lot about the law and you think you do, too. What could be more fair than that? What better way to demonstrate your commitment to what you believe is right*
>
> *Bill, the motion I will serve on you on Friday will seek sanctions, big ones, and will make you and Mr. Balcerak (Plaintiff's stepson) do a number of things the two of you probably don't particularly want to do. We're in Federal Court moving beyond the short peaceful period at the commencement of the case. After Friday, nobody's kidding around anymore. No more posturing. And, if you continue to call me names, I will ask the court to stop you*

6. Plaintiff refused to dismiss the complaint with prejudice against all defendants but agreed to drop the charge against Mr. Edgren with prejudice. As it was clear that Plaintiff did not want his dead wife's son pulled into a case he has

3

nothing to do with, Edgren refused to accept Plaintiff's counteroffer. Plaintiff e-mailed Edgren asking what he theory was for dragging an innocent person into this litigation. He responded in an e-mail received by Plaintiff on July 14, 2015 at 4:54 pm, which read in part:

> You will find out Friday by checking the docket. Playtime is over, Bill.

7. Plaintiff sought clarification from Edgren as to the nature of his reasoning for dragging his late wife's son into the instant case by asking,:

> Are you saying, "Dismiss me or I drag your dead wife's son, who has nothing to do with this case, INTO the case?"

8. Edgren replied shortly thereafter in an e-mail which reads in part:

> *I have simply informed you, in the usual and customary manner of my profession, what I <em>am</em> doing. Am doing right now, in fact- I am writing in the motion about why the court needs, among other things, to hear from your stepson in this case. I have also noted the things you could choose to do. You are free to do any of them or none of them. Dismiss anyone you want, any time. Or don't. Just remember, though- I am your worst nightmare (as lawyers on the other side of a case tend to be). Don't try my patience.*
>
> *I'm busy, Bill. Do you have anything substantive to talk about? Otherwise, write me after you see Friday's filing.*

9. If it pleases the Court to revoke Plaintiff's in forma pauperis status, Plaintiff can now afford the $400 filing fee. Although the form submitted was clearly a snapshot of the Plaintiff's financial condition at the moment it was filed and accepted by the court, the death of Plaintiff's wife on June 17, 2015 has changed that status. (See ECF 17 at ¶3) Despite the callousness of Edgren's comment:

*"The size of Plaintiff's household has also been reduced by one due to the death of his spouse...."*

Edgren noted that Plaintiff had stated he intended to sell his car and use the proceeds to hire an attorney. However, before Edgren filed his motions, Plaintiff decided instead to give the car as a gift to his younger sister who needs transportation. Plaintiff's stepson did not start paying half the rent until after his mother died. However, as Plaintiff expects to receive a $15,000 life insurance settlement as a result of his wife's sudden decline and death, not anticipated when Plaintiff filled out his IPF form, if the Court rules that Plaintiff should pay the $400 filing fee, Plaintiff will do so.

10. The extortionate and mean-spirited nature of Edgren's complaint is emblematic of the sort of harassment Plaintiff has received at the hands of all defendants over the past months and years. Plaintiff has no idea who made the phone call, but he received a letter from the Columbia, Maryland, Social Security Office where the worker informed him that someone had accused Plaintiff of underreporting his income due to the many books he had allegedly sold, and the blogs he was being paid to write for. Plaintiff assured the Social Security worker that he was not and had not worked in a paid position for a blog in years, and on the odd occasion someone purchases one of Plaintiff's books, he gets all of approximately $1.50 in royalties. Edgren's sneering references to Plaintiff's 15-year struggle with Parkinson's disease aside, it is true that Plaintiff suffers from some minor executive dysfunction, very minor cognitive difficultie, and impulse control problems, but the

IFP was filed correctly to the best of Plaintiff's knowledge and ability on the day it was filed.

11.  Edgren's assumption that the Plaintiff would risk a perjury conviction to cheat the court out of $400 is ludicrous, ridiculous, and insulting.

12.  Plaintiff asserts that Edgren and the other defendants have taken advantage of Plaintiff's understandable grief over the death of his wife of 25 years to throw around confusing allegations and charges that this pro-se Plaintiff can barely keep straight in his mind. They are doing this willingly, just like their constant blaspheming of the memory of Plaintiff's wife is done for no other reason than to cause the extreme emotional distress they insist on inflicting.

THEREFORE: If it pleases the court to rescind Plaintiff's IFP status, Plaintiff will not object. Plaintiff does object, however, to the tactics being employed by this retired lawyer, who is held in low regard by his own community. Since Plaintiff does not object to the rescinding of his IFP status, there is no need for an order to require Plaintiff to show cause, and there is no reason to reward Edgren's extortion by forcing Plaintiff's reclusive stepson to be humiliated in a Federal Court Room for no other reason than it would cause more emotional distress on Plaintiff, who has already suffered more than his share of emotional distress at the hands of these defeendants, as well as the circumstances of life and death in his house.

Plaintiff prays this court DENY Edgren's motion to dismiss and DENY his motion requiring Plaintiff to appear and show cause as the instant case has merit,

6

but the IFP issue is no longer of any concern to Edgren as Plaintiff agrees to pay the $400 if the Court requires such payment.

Plaintiff also asks the Court to refer Edgren's actions to whatever sanctioning body in the State of Alaska that examines the ethics of retired attorneys and to consider the referral of Extortion charges under 18 USC §875.

Dated this 21st Day of July, 2015          Respectfully Submitted

William M. Schmalfeldt, Sr., Pro Se
6636 Washington Blvd. #71
Elkridge, MD 21075
(410) 206-9637
Email bschmalfeldt@comcast.net

### CERTIFICATE OF SERVICE

I certify that on July 21, 2015, I served copies of this motion to named and known Defendants David Edgren, Patrick Grady and Scott Hinckley by First Class US Mail.

William M. Schmalfeldt, Sr.