FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JUL 28  AM 9: 42

CLERK'S OFFICE
AT GREENBELT

BY_____ BV _____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

WILLIAM M. SCHMALFELDT,                )
                                       )
    Plaintiff,                         )
                                       )
vs.                                    )
                                       )
PATRICK G. GRADY, et al,               )
                                       )
    Defendants.                        )   Civil Action No. 1:15-cv-01241 RDB
_____)

### REPLY TO PLAINTIFF'S OPPOSITION TO
### MOTION TO TERMINATE PLAINTIFF'S
### IN FORMA PAUPERIS STATUS
### AND DISMISS WITH PREJUDICE
### AND MOTION REQUESTING AN ORDER
### REQUIRING PLAINTIFF TO APPEAR
### AND SHOW CAUSE

COMES NOW David Edgren, *pro per*, a named but not yet served defendant in this case, having appeared specially and without conceding or waiving any right to include, without limit, any right of jurisdiction, venue, due process, or service of process, and hereby replies to Plaintiff's "Response to Defendant David Edgren's and, by Adoption, Defendant Scott Hinckley's Motion to Terminate Plaintiff's *in forma pauperis* Status and Dismiss with Prejudice and Motion Requiring an Order Requiring Plaintiff to Appear and Show Cause" (ECF 28, hereinafter, the "Opposition"). There is good cause for the court to find the Opposition completely unpersuasive in responding to any of the motions appearing on the court's docket at

ECF 19[1] (hereinafter, collectively, the "Pending Motions") in that the Opposition does not advance any coherent or competent opposition to any of the Pending Motions as explained following in this reply. The court should as a result grant the relief sought by the undersigned for the reasons set forth in each of the Pending Motions.

REPLY ARGUMENT

I. PLAINTIFF HAS CONCEDED THAT HIS IFP STATUS SHOULD BE TERMINATED BASED ON THE RECENT CHANGES TO HIS ECONOMIC SITUATION, AND THE COURT SHOULD THUS IMMEDIATELY GRANT THE MOTION TO TERMINATE ON THAT BASIS

Numbered paragraph 9 of Plaintiff's Opposition reads in full as follows:

If it pleases the Court to revoke Plaintiffs *in forma pauperis* status, Plaintiff can now afford the $400 filing fee. Although the form submitted was clearly a snapshot of the Plaintiffs financial condition at the moment it was filed and accepted by the court, the death of Plaintiffs wife on June 17, 2015 has changed that status. (See ECF 17 at ¶3) Despite the callousness of Edgren's comment

*"The size of Plaintiff's household has also been reduced by one due to the death of his spouse...."*

---

[1] The Pending Motions at ECF 19 are 1) a motion to terminate Plaintiff's *in forma pauperis* (hereinafter, "IFP") status (hereinafter, the "Motion to Terminate") based upon Plaintiff having misled the court as to his true economic status in his IFP motion docketed at ECF 2 (hereinafter, the "IFP Motion") and because of current changes in Plaintiff's economic situation; 2) a motion to dismiss this case with prejudice (hereinafter, the "Motion to Dismiss") as a result of Plaintiff having provided false information in the IFP Motion; and 3) a motion requesting an order requiring Plaintiff to appear and show cause (hereinafter, the "Motion for Show Cause") as to why he should not be sanctioned based on his filing untrue information in the IFP motion.

> Edgren noted that Plaintiff had stated he intended to sell his car and use the proceeds to hire an attorney. However, before Edgren filed his motions, Plaintiff decided instead to give the car as a gift to his younger sister who needs transportation. Plaintiff's stepson did not start paying half the rent until after his mother died. However, as Plaintiff expects to receive a $15,000 life insurance settlement as a result of his wife's sudden decline and death, not anticipated when Plaintiff filled out his IPF [sic] form, if the Court rules that Plaintiff should pay the $400 filing fee, Plaintiff will do so.

Opposition, p. 4-5, ¶9. Disregarding Plaintiff's statements about the car and his completely irrelevant attempt to prejudice me in the eyes of the court by quoting a completely accurate and neutral reference I made to his household size in a previous motion[2] (*see* ECF 17, p. 10), Plaintiff admits that there is no reason to continue his IFP status as he is no longer indigent. The court is thus urged to take such action without further need of consideration. Plaintiff, though, is mistaken that the consequences of the termination of his IFP status should merely be that he would refund the $400 filing fee at some point in the future. He has also received service of process at government expense by the means of the U.S. Marshals' service. The court should order the U.S. Marshals to stand down immediately and Plaintiff should be required to undertake further service efforts at his own expense. Plaintiff should also be

---

2 Plaintiff appears to have forgotten that he sued me and six other defendants in this case for a half-million dollars apiece. The language used throughout the Opposition demonstrates that he thinks that this case is some sort of game where he can make the rules about what the defendants can say and can't say by constantly pointing at, among others, his Parkinson's Disease and his deceased wife. The other defendants and I are entitled to point out such facts and raise such defenses as we believe to be appropriate within the confines of the law and the court's rules. Plaintiff is, plain and simple, out of line in constantly complaining about how unfair everyone is to him based upon his personal circumstances. Paragraph 12 of his Opposition provides an excellent example of his viewpoint. *See* ECF 28, p. 6.

required to reimburse the U.S. Marshals' Service for all expenses of service paid or expended to date.

This issue of bearing costs of service was raised in the Motion to Terminate in a footnote. *See* ECF 19, p.12, n. 9. The gist of that footnote is repeated here- Plaintiff started this case with one defendant. His amended complaint purports to add six[3] more. Plaintiff has threatened to add numerous other people to this litigation, at one point threatening to sue "everybody." *See* screen captures of Plaintiff's Internet postings in this regard attached to ECF 17 at Exhibit "H." The court should also, before Plaintiff gives his vehicle away and spends the remaining $14,600 of his insurance proceeds and if this litigation is not otherwise dismissed, consider granting motions on an expedited basis by the respective named defendants that would require Plaintiff to post the bond that is authorized under the District's Local Rule (hereinafter, L.R.) 103.4 Security for Costs which provides:

> Any party against whom affirmative relief (other than a compulsory counterclaim) is filed may file a motion requesting that the party seeking the affirmative relief give security for costs if that party is not a resident of this District. Upon the filing of the motion, the Court shall issue a show cause order to the party seeking affirmative relief. A party who does not show cause why such security should not be required shall deposit with the Clerk on the date that the show cause response is due or on such later date as may be set by the Court the sum of $150 or such higher amount as the Court determines is appropriate. The Court may dismiss the claim of a party who fails to deposit the required security. This Rule shall not apply to any party proceeding *in forma pauperis* or as a seaman under 28 U.S.C. § 1916.

LR 103.4. A proposed order granting the Motion to Terminate is filed with this reply.

---

3 Footnote 9 on page 10 of the Motion to Terminate mistakenly notes seven instead of six.

II. THE COURT SHOULD ALSO FIND THAT PLAINTIFF'S IFP STATUS SHOULD BE TERMINATED BASED ON PLAINTIFF'S HAVING MISLED THE COURT AS TO HIS ECONOMIC CIRCUMSTANCES IN THE IFP MOTION

The Plaintiff, in conceding he is no longer entitled to IFP status, only addresses one of the reasons argued for terminating that status in the Motion to Terminate. He would have the court, taking paragraph 9 of his Opposition at face value, simply accept the result he proposes and disregard the questions raised by Plaintiff's conflicting statements about his stepson Thomas J. (T.J.) Balcerak's (hereinafter, "Balcerak") contribution to his household at the time of Plaintiff's filing of the IFP Motion. *See* discussion of this in the Pending Motions, ECF 19, at p. 4-7. Defendant Scott Hinckley[4] and I have squarely raised, supported by evidence in the form of an admission by Plaintiff (*See*), that Plaintiff misrepresented his means to the court in the IFP Motion[5].



ECF 17, Exhibit "D". Nothing in Plaintiff's Opposition does anything to either explain his

---

[4] Defendant Hinckley, who like me has not yet been served, has appeared specially and joined in the Pending Motions. ECF 23 and 24.

[5] It is noted that Plaintiff has not denied that this admission was posted to his Twitter feed by him on October 27, 2014.

October 27, 2014, admission that Balcerak "[p]ays rent and helps me and his mom[6]" or do anything other than to baldly repeat that Balcerak only began to pay rent and contribute to Plaintiff's household expenses after Plaintiff's wife died in June of this year. Opposition, p. 5, ¶ 9. The Opposition offers nothing in addressing this situation other than Plaintiff's self-serving statements. It is only the court that can resolve this conflict between Plaintiff's own statements, not the Plaintiff[7]. The proposed order granting the Motion to Terminate filed with this reply addresses this issue.

    III.   THE OPPOSITION DOES NOT RESPOND IN ANY COMPETENT MANNER TO THE LAW AND ARGUMENT SET FORTH IN THE MOTION TO DISMISS AND THE COURT SHOULD THUS DISMISS THIS CASE WITH PREJUDICE BASED ON PLAINTIFF'S HAVING MISLED THE COURT AS TO HIS ECONOMIC CIRCUMSTANCES IN THE IFP MOTION

Incredibly, Plaintiff demonstrates his complete lack of comprehension of the seriousness of the matters raised in the Motion to Dismiss by concluding his Opposition with the statement, "[T]he IFP issue is no longer of any concern to Edgren as Plaintiff agrees to pay the $400 if the court requires such payment." Opposition, p. 7. Plaintiff could not be more wrong. As is

---

6  Attached as Exhibit "A" to this reply for the purpose of providing the court with context are screen captures of the posts by Twitter user @asideofbacon to whom Plaintiff was responding in making his admission on October 27, 2014. Screen captures of Plaintiff's Twitter posts immediately preceding and following the admission are attached as Exhibit "B."

7  The court is urged to find that the best way to get fully to the bottom of this situation is to grant the Motion for Show Cause and require Plaintiff to produce his bank records covering the relevant period for examination by the defendants and the court, and issue a subpoena requiring Balcerak to appear and testify. *See* ECF 19, p. 19-21.

argued in the Motion to Dismiss, because Plaintiff lied to the court to secure his IFP status, this case should be dismissed, and dismissed with prejudice[8]. *See* law and argument at ECF 19, p. 9-18. Dismissal is mandatory under such circumstances. 28 U.S.C. § 1915(e)(2)(A) (if a court determines at any time that the allegation of poverty made in an IFP application is "untrue," then the court "shall dismiss the case"). Dismissal with prejudice is entirely warranted under the circumstances in light of Plaintiff's bad faith. *See* law and argument at ECF 19, p. 14-18. Even given the lesser standard of pleading to which Plaintiff, as a *pro se* litigant, is held[9], it only makes sense in light of cases that have ruled on FRCP Rule 12(b) motions to dismiss[10] that Plaintiff must advance something more in order to competently oppose the instant motion to dismiss than a few self-serving statements and a lot of bluster. The court should grant the Motion to Dismiss with prejudice as to all of Plaintiff's claims and as to all of the various defendants, named and pseudonymous, leaving open only the matters raised in the Motion for Show Cause. A proposed order so granting the Motion to Dismiss is filed with this reply.

IV. THE OPPOSITION DOES NOT RESPOND IN ANY COMPETENT MANNER TO THE LAW

---

8 In yet another stunning indication that Plaintiff does not take this litigation seriously, he claims, in paragraph 11 of his Opposition, that "Edgren's assumption that the Plaintiff would risk a perjury conviction to cheat the court out of $400 is ludicrous, ridiculous and insulting." ECF 28, p. 6. Actually I never thought any such thing. I thought Plaintiff would take the risk because he believed he would get away with it.

9 *See, e.g., White v. White*, 886 F.2d 721, 725 (4th Cir. 1989) (citations omitted) (pleadings of *pro se* parties be held to a less stringent standard than pleadings drafted by lawyers).

10 *See, e.g., Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

AND ARGUMENT SET FORTH IN THE
MOTION FOR SHOW CAUSE AND THE
COURT SHOULD THUS ISSUE AN ORDER
GRANTING THE MOTION

The sum total of Plaintiff's response in the Opposition to the Motion for Show Cause is as follows.

> Since Plaintiff does not object to the rescinding of his IFP status, there is no need for an order to require Plaintiff to show cause, and there is no need to reward Edgren's extortion by forcing Plaintiff's reclusive stepson to be humiliated in a Federal Court Room for no other reason than it would cause more emotional distress on Plaintiff, who has already suffered more than his share of emotional distress at the hands of these defeendants [sic], as well as the circumstances of life and death in his house.

Opposition, ECF 28, p. 6. That paragraph can be reduced, in sum, to the words "I don't want to appear for a show cause hearing for various reasons." Unfortunately for Plaintiff, none of those reasons are relevant in any manner to his having submitted false information to the court in his IFP Motion and, in doing so, having committed an act that, on the face of the Motion above his signature, is identified as perjurous. *See* law and argument at ECF 19, p. 19-21. The court should grant the Motion for Show Cause as being, in effect, non-opposed. A proposed order so granting the Motion for Show Cause is filed with this reply.

V.   THE OPPOSITION REPEATEDLY AND
     THROUGHOUT CASTS IMPROPER
     ASPERSIONS AND RAISES SCURRILOUS
     IRRELEVANT MATTERS, AND THE
     COURT SHOULD ADMONISH PLAINTIFF
     FOR LITIGATING HIS CASE IN SUCH A
     MANNER

The Opposition is a seven page violation of FRCP Rule 11. As such, it is both an affront to me and to the dignity of the court. While reading it, various procedural options ran through my mind: A motion for sanctions under FRCP Rule 11(c)? A motion to strike under FRCP Rule 12(f)? But making those filings would have just delayed resolution of the matters raised in the Pending Motions. The court, however, should not think for a moment that I am not very, very distressed by the impertinent and scandalous allegations against me set forth throughout the Opposition.

Plaintiff believes somehow that it is appropriate to assert in the Opposition, for example, that when I was practicing law, I was "not held in high esteem." ECF 28, p. 1, ¶ 1. Plaintiff explains, "[Defendant Edgren] is not held in high esteem according to most of the attorney rating services one can find online naming him and rating his abilities." *Id.* No documentation supporting this contention is attached by Plaintiff but, even to the extent he would have done so, Plaintiff offering the hearsay *ad hominem* statements of others and seeking to generalize them as applying to my 25 year career as an attorney, bluntly put, has nothing to do with whether the Plaintiff lied on his IFP Motion (ECF 2) or whether Balcerak was sharing the rent and other expenses with Plaintiff on and after October 27, 2014, as admitted by Plaintiff (*see* Exhibit "B"). The things written about me in the Opposition are impertinent and scandalous, yes, but most important they are completely ineffective in supporting Plaintiff's arguments set forth in the Opposition. The court should find them, as such, completely gratuitous and

improper, and Plaintiff should be admonished not to lard in the future his filings against any defendant with such irrelevant personal attacks.

Even more troubling to me is that Plaintiff uses the word "extortion" or some form of it like a blunt instrument in the Opposition in describing my dealings with him. This appears eight times in the seven pages of the Opposition. His fundamental misunderstanding of extortionate acts in the context of litigation is highlighted on the last page of the Opposition when he writes, "Plaintiff also asks the court to refer Edgren's actions to whatever sanctioning body in the State of Alaska that [sic] examines the ethics of retired attorneys and *consider the referral of Extortion* [sic]*charges under 18 USC §875*." ECF 28, p. 7 (emphasis added).

The instant case is one involving purely state law claims. Maryland's highest court, the state's Court of Appeals, in *State v. Rendelman*, 947 A.2d 546, 404 Md. 500 (Md. 2008), held,

> [A]s a matter of law, that threats of litigation, regardless of merit, do not constitute "wrongful threats of economic injury," within the scope of Md.Code (2002), §3-701 of the Criminal Law Article. In addition, we shall hold that threats of litigation, regardless of merit, do not constitute "unlawful extortion" within the meaning of Md.Code (2002, 2005 Repl.Vol.), §3-706 of the Criminal Law Article.

*Rendelman*, 947 A.2d at 547. While there does not appear to be a Fourth Circuit case on point, the holding in *Rendelman* has a very helpful discussion of similar conclusions in other federal circuit courts about the application in comparable circumstances of the Hobbs Act, as codified at 18 U.S.C. § 875 and § 1951.

> Looking to the federal jurisdictions that have analyzed this same issue under the statutory language of the Hobbs Act, we note that a majority of the federal jurisdictions have held that a threat to file a law suit unless a settlement demand is accepted, regardless of whether the threat was made in good faith, is not a

wrongful threat.[11] *See U.S. v. Pendergraft,* 297 F.3d 1198, 1206 (11th Cir.2002); *Deck v. Engineered Laminates,* 349 F.3d 1253, 1258 (10th Cir.2003); *Vemco, Inc. v. Camardella,* 23 F.3d 129, 134 (6th Cir.1994); *First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 547 (9th Cir.1988); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S,* 751 F.2d 265, 267-68 (8th Cir.1984). We believe the analytical framework utilized by these courts is consistent with our interpretation of Maryland's statutory prohibition against extortion.

*Rendelman,* 947 A.2d at 557-58; *see also Deck v. Engineered Laminates,* 349 F. 3d 1253, 1258 (10th Cir. 2003). Footnote 11 in the *Rendelman* holding addresses the handful of circuits that have concluded otherwise, finding that all of them based their holdings on baseless or otherwise improper threats of litigation. *Id.,* at 557. Attached to this reply as Exhibit "C" is the initial email between Plaintiff that contains the settlement offer that Plaintiff complains is extortionate (as opposed to the cherry-picked, but irrelevant, ones that Plaintiff attached to his motion). I am confident that the court will agree with me in finding that my actions in this case as communicated to Plaintiff were not by any stretch of the imagination "baseless."

The Plaintiff makes other scurrilous and irrelevant allegations against me in the Opposition, such as that I may have improperly reported him to the Social Security Administration for fraud[11] and that I "sneer" at his suffering from Parkinson's Disease[12]. When

---

11 I hereby flatly and categorically deny in full contemplation of the penalties for perjury in the presence of this court that I have been in contact of any sort or description whatsoever with the Social Security Administration concerning Plaintiff. Plaintiff's inclusion of his issues with Social Security is a transparent effort to prejudice me in the eyes of the court (and to bulk out the Opposition by half a page with even more content that is entirely irrelevant). *See* ECF 28, p. 5, ¶ 10.

12 I have never sneered at Plaintiff's Parkinson's Disease. I am in fact saddened by it, as my wife suffers from a similar condition and I am her full-time caregiver. My wife, however,

that content is taken out of the Opposition there is, as explained above in this reply, nothing left of substance. Plaintiff, however, should not be allowed to think that the court in any way countenances this sort of "personal attack" form of pleading.

## CONCLUSION

The court should grant each of the Pending Motions for the reasons asserted in them and in this reply. As noted, proposed orders for each motion have been submitted with this filing. I further believe that the court should step in at this time and admonish Plaintiff for the manner in which he has pled his Opposition, which the court is urged to conclude is highly improper, and which will only result in my filing motions for sanctions under FRCP Rule 11 if allowed to continue.

---

does not choose to use her illness as a mechanism to get the things that she wants. Contrast this with material from a recent podcast by Plaintiff:

> [38:40] Think about that. This judge does not share your unreasonable, unreasoning hatred of me. He doesn't. He doesn't know me. And those of you who have met me in person and you know who you are, right Howell? You know I can come across as a very charming individual. So ask yourself. Who do you think a jury of my peers is going to side with? A bunch of anonymous morons who are defaming a person's dead wife for no reason other than they enjoy inflicting emotional distress on the husband of the departed woman, a woman he loved more than life itself, *or do you think maybe a jury and a judge will see this 60 year old man, probably be 61 by the time this goes to trial, using a roller walker to get from point to point after having suffered from Parkinson's Disease for, it'll be 16 years by that point. Who do you think the Judge is going to side with? The disabled guy whose wife died?*

http://www.spreaker.com/user/bloodymike/have-i-just-been-extorted (*emphasis added*). In any event, even accepting for the sake of argument that I would have sneered at Plaintiff every day, that state of affairs would still be completely irrelevant to the Pending Motions.

DATED at Wasilla, Alaska this 24th day of July, 2015.

                                                David R. Edgren, *pro per*
                                                1150 S. Grantham Rd.
                                                Wasilla, Alaska  99654
                                                (907) 355-5697
                                                davidredgren@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | |
|---|---|
| WILLIAM M. SCHMALFELDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PATRICK G. GRADY, et al, ) | |
| ) | |
| Defendants. ) | Civil Action No. 1:15-cv-01241 RDB |

## CERTIFICATE OF SERVICE

COMES NOW David Edgren, *pro per*, a named but not yet served defendant in this case, having appeared specially and without conceding or waiving any right to include, without limit, any right of jurisdiction, venue, due process, or service of process, and by my signature affixed to this document below hereby certifies that, on the 28th day of July, 2015, I served true and correct copies of my reply to Plaintiff's response to my motion to terminate his IFP status, dismiss the case with prejudice and for show of cause with Exhibits A-C attached, my request for ruling on said motion, proposed orders on my motions to terminate Plaintiff's IFP status, dismiss this case with prejudice and for show cause, request for ruling on the motions, and this certificate of service filed with this court on Plaintiff to his residence address at 6636 Washington Blvd., Lot 71, Elkridge, MD 21705 by personally placing same in the First Class mail of the United States Postal Service with proper postage affixed.

DATED at Wasilla, Alaska this 28th day of July, 2015.

*[signature]*
David R. Edgren, *pro per*
1150 S. Grantham Rd.
Wasilla, Alaska 99654
(907) 355-5697