U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 AUG 18  PM 1: 24

CLERKS OFFICE

DEPUTY

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM M. SCHMALFELDT | )  Case No. 1:15-cv-01241-RDB |
| | ) |
| Plaintiff, | )  MOTION TO WAIVE INITIAL SERVICE, |
| vs. | )  ANSWER OF DEFENDANT SCOTT |
| PATRICK G. GRADY, et al, | )  HINCKLEY, AND COUNTERCLAIM OF |
| | )  COUNTERCLAIMANT SCOTT |
| Defendants | )  HINCKLEY |
| | ) |

| | |
|---|---|
| SCOTT HINCKLEY | ) |
| | ) |
| Counterclaimant, | ) |
| vs. | ) |
| WILLIAM M SCHMALFELDT, | ) |
| | ) |
| Counter-Defendant | ) |
| | ) |

**MOTION TO WAIVE INITIAL SERVICE,**

**ANSWER TO COMPLAINT, AND COUNTERCLAIM**

COMES NOW Scott Hinckley, *pro per*, a named but not yet served defendant in this

case, having appeared specially and without conceding or waiving any right to include, without

limit, any right of jurisdiction, venue, due process, or service of process, and hereby moves to

waive service of the issued summons, to answer the complaint, and file this counterclaim.

**WAIVER OF SERVICE**

1. Named Defendant Hinckley has not been served the issued summons (ECF 15) for the

   Amended Complaint (ECF 13). He hereby moves this Court to waive the requirement for

this specific service on him, so as to allow him the opportunity to answer the complaint and submit a counterclaim.

## ANSWER OF DEFENDANT TO COMPLAINT

2.  Defendant Hinckley denies all allegations made against him solely or jointly with the other defendants, including allegations where the defendant is misidentified as "Christopher Hinckley", except number 19. Defendant admits, as the complaint states, that "The defamation of defendants is per se in nature."

3.  Defendant Hinckley lacks enough information to admit or deny all other allegations and claims against all other defendants and therefore denies the allegations.

4.  Defendant asserts the following defenses, without regard to whether they are "affirmative" defenses or matters as to which the Plaintiff has the burden of proof: venue, personal jurisdiction, and failure to state a claim upon which relief may be granted. The defendant reserves the right to assert any other defenses as may be determined to be proper and just.

## COUNTERCLAIM

5.  Defendant Hinckley (Counterclaimant) brings this Permissive Counterclaim against Plaintiff William Schmalfeldt (Counter-Defendant).

6.  From the period of June through August of 2015, the Counter-Defendant engaged in a series of acts for the express purpose of intimidating and embarrassing the Counterclaimant into silence, i.e., to prevent him from further expressing his opinion on the internet. Specifically, the Counter-Defendant was trying to stop the Counterclaimant, using the pseudonymous name "agiledog", from expressing his opinions on websites hosted by third parties. The Counter-Defendant engaged in an effort to discover the personal information of the

Counterclaimant, with the intention of publicizing this information (a process that is called "doxing" on the Internet), for the purpose of intimidating the Counterclaimant into silence for fear of additional exposure.  After two failed attempts at identifying the Counterclaimant, the Counter-Defendant was successful in identifying the Counterclaimant.  In the process, the Counter-Defendant obtained copyrighted works of the Counterclaimant from websites, and improperly used them in web pages and emails created by the Counter-Defendant.  This is the basis of the copyright claims against the Counter-Defendant.  In a web page (specifically, a blog post) and in emails to the third parties, the Counter-Defendant falsely accused the Counterclaimant of crimes and abusive behavior, and attempted to file false and baseless criminal charges against the Counterclaimant with his local police.  These acts are the basis of the claims of defamation.  As part of this campaign of intimidation, the Counter-Defendant made calls to the Counter-Defendant's home, threatened to report the Counterclaimant to the media and law enforcement, sent an email to the Counterclaimant's wife (via a public mailbox at her business), and emailed the Counterclaimant numerous times, continuing even after being told specifically to stop.  These actions caused severe annoyance and alarm for the Counterclaimant.  These acts are the basis for the claim of harassment.

## THE PARTIES

7.  Counter-Defendant William M. Schmalfeldt Sr. is retired, and lives in Elkridge, MD.

8.  Counterclaimant Scott Hinckley is a software engineer, and resides in Shirley, MA.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a), as Federal Courts have exclusive jurisdiction for all copyright claims.

10. This Court has personal jurisdiction over the parties pursuant to 28 U.S.C. § 1332 (diversity of citizenship) as the Counterclaimant resides in Massachusetts and the Counter-Defendant resides in Maryland, and the matter in controversy exceeds $75,000.

11. This Court has supplemental jurisdiction for the state claims pursuant to 13 U.S.C. § 1367(a).

12. This Court is the proper venue for this case pursuant to 28 U.S.C. § 1391, as the Counter-Defendant resides in Maryland, and committed the acts that gave rise to these claims while at his residence in Maryland.

## FIRST CAUSE OF ACTION – COPYRIGHT VIOLATIONS

13. The Counter-Defendant used three different copyrighted works of the Counterclaimant. Copyright registration has been submitted for all three images; they are: Picture #1) U.S. Copyright Office Case Number 1-2592674523 "Beta Puppy Picture Number 1", Picture #2) U.S. Copyright Office Case Number 1-2592887651 "Beta Portrait Number 1", and Picture #3) U.S. Copyright Office Case Number 1-2592887694 "Family Picture Number 1". The Counterclaimant is the sole copyright holder of all three of these works of art, and has not granted the Counter-Defendant the right to use or reproduce these images in any way or form. In most of the uses the Counter-Defendant made using the third picture, the Counter-Defendant cropped the picture to only contain the image of the Counterclaimant – no other modifications were made to that image. No modifications were made to either of the other two images. The following paragraphs describe the specific violations for each picture.

14. In an email message to the Counterclaimant dated June 30, 2015, on or about 2:29 PM, the Counter-Defendant included a copy of picture #2. As the Counter-Defendant did not have

permission to use or reproduce this image, this is a copyright violation.  See attached Exhibit A.

15. In an email message to the Counterclaimant dated June 30, 2015, on or about 7:52 PM, the Counter-Defendant included copies of both picture #1 and picture # 3.  As the Counter-Defendant did not have permission to use or reproduce these images, these are copyright violations.  See attached Exhibit B.

16. In an email message to a shared electronic inbox used by the business of Counterclaimant's wife dated June 30, 2015 on or around 8:50 PM, the Counter-Defendant included copies of both picture #1 and picture #3.  As the Counter-Defendant did not have permission to use or reproduce these images, these are copyright violations.  See attached Exhibit C.

17. In a web page created on June 30, 2015, at the web address of http://patriotombudsman.com/2015/06/30/dog-trainer-tormenting-recently-widowed-disabled-man/, the Counter-Defendant included copies of both picture #1 and picture #3.  As the Counter-Defendant did not have permission to use or reproduce these images, these are copyright violations.  This web page has since been removed by the Counter-Defendant.  See attached Exhibit D.

18. In the social media application Twitter, in a comment made on August 9, 2015, the Counter-Defendant posted a complete image of a page of the Counterclaimant's wife's web site, which included the entire image of picture # 3.  As the Counter-Defendant did not have permission to use or reproduce this image, this is a copyright violation.  See Exhibit E.

19. The Counter-Defendant is familiar with copyright issues. He was sued before by a third party for copyright violations; the suit was resolved through a negotiated settlement in which the Counter-Defendant agreed to remove the copyright material from his website. He knew better than to use these works in this way – it makes these violations all the more egregious.

## SECOND CAUSE OF ACTION – DEFAMATION

20. The test for defamation, under Maryland statute, is comprised of four parts: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm. A defamatory statement is one 'which tends to expose a person to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Offen v. Brenner*, 402 Md. 191, 935 A.2d 719 (2007). The Counter-Defendant, on three different occasions, made statements that meet these requirements.

21. In an email (part of Exhibit F) dated June 30, 2015, at or around 6:47 PM, to the Chief of Police of Shirley, MA, the town in which the Counterclaimant resides, the Counter-Defendant claimed the Counterclaimant had committed the criminal acts of "Stalking" and "Criminal Harassment", according to MA General Laws Part IV, TITLE I, Chapter 265, Section 43 and Section 43A (a). This qualifies as defamation by meeting the four conditions mentioned above. For the first condition, this is a defamatory statement, as stating that a person has committed a crime to a police officer would prevent that officer from having a good opinion of that person. For the second condition (that the statement be false), Sections 43 and 43A state the following:

> "Section 43. (a) Whoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury, shall be guilty of the crime of stalking
>
> Section 43A. (a) Whoever willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which

seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress, shall be guilty of the crime of criminal harassment"

Both of these statutes require actions that are directed at a person. At the time of the allegation by the Counter-Defendant, the Counterclaimant had never: talked to the Counter-Defendant in person (they have never met), spoken with him on the phone, sent him an email, sent him a direct message via any social media (such as Twitter or Facebook), or commented on the Counter-Defendant's blogs – the Counterclaimant had never had any direct contact with the Counter-Defendant at all, so there could be no "pattern of conduct or series of acts … directed at a specific person", clearly making this accusation false. Comments made by the Counterclaimant about the Counter-Defendant on third party sites cannot be construed to be directed at the Counter-Defendant. For the third condition, for the Counter-Defendant to be legally at fault, he made this allegation knowing the above facts, so he knew this was a false allegation, making him at fault for the defamation. For the fourth condition, as this is defamation *per se* [a statement which falsely charges a person with the commission of a crime is defamatory *per se* (A. S. Abell Co. v. Barnes, 258 Md. 56 (1970)], the Counterclaimant does not need to demonstrate that he has suffered harm – it is assumed or implied that the Counterclaimant has had his reputation damaged by a false criminal charge.

22. Also in that email to the Chief of Police (part of Exhibit F) dated June 30, 2015, the Counter-Defendant states "Mr. Hinckley has made some thinly veiled death threats against me." Making such a statement to a law enforcement officer is also a defamatory statement, and meets the first, third, and fourth conditions for defamation under Maryland statute for the same reasons as outlined in the preceding paragraph. As to the second condition, that the statement is false, the Counter-Defendant has not, and cannot, provide any statements by the

Counterclaimant that are death threats to the Counter-Defendant, thinly veiled or otherwise. The Counter-Defendant has years of employment in various communications-related jobs – he clearly knows the difference between statements to the effect of "I wish he was dead" and "I wish to kill him".  The Counter-Defendant's attempted portrayal of statements similar to the former made by the Counterclaimant to be statements like the latter is malicious and false.

23. In the email sent to the Counterclaimant's wife's business (Exhibit C), the Counter-Defendant stated "**DOG TRAINER TORMENTING RECENTLY-WIDOWED DISABLED MAN**" (bold and capitalization in original) and also included the statement "he has joined in with … tormenting your humble correspondent over the death of my wife". The Counter-Defendant is claiming that the Counterclaimant is tormenting him - these are defamatory statements.  As to the first condition of defamation, to claim someone is tormenting another person, especially a recently widowed and disabled person, would expose the alleged tormenter to public scorn and contempt, which makes it defamatory if false.  As to the second condition, that such a claim must be false, tormenting is defined as "to cause to undergo great physical pain or mental anguish".  As mentioned in the previous two paragraphs, the Counterclaimant has never had direct contact with the Counter-Defendant. All of the opinions the Counterclaimant has expressed about the Counter-Defendant are made in locations where the Counter-Defendant must come seek them out.  These statements are not slander or libel; they are the Counterclaimant's opinion of the Counter-Defendant, based on the Counter-Defendant's own words and actions.  If they are causing him great mental anguish, he has to merely stop seeking out these comments – they are not being sent to him or forced on him.  They are not placed where the Counter-Defendant would encounter them in his normal course of affairs.  It is the Counter-Defendant himself who is causing him

to be exposed to these comments – the Counterclaimant is not causing him to be exposed to them.  So it is false that the Counterclaimant is tormenting the Counter-Defendant – the Counter-Defendant is tormenting himself.  As to the third condition for defamation, that the Counter-Defendant is legally at fault for the statement, he knew that claiming someone was "tormenting a recently-widowed" person was an emotionally charged statement, and that it was false, making him at fault for making it. As to the fourth condition, that the Counterclaimant suffered harm from it, the Counter-Defendant sent this message to a shared inbox, and more than one person who has viewed the message has asked the Counterclaimant how he could do such a terrible thing, which proves that their opinion of him has been harmed.

## THIRD CAUSE OF ACTION – HARASSMENT

24. The definition of Harassment, according to Maryland Law Title 3, Subtitle 8 § 3-803 is: A person may not follow another in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys the other: (1) with the intent to harass, alarm, or annoy the other, (2) after receiving a reasonable warning or request to stop by or on behalf of the other; and (3) without a legal purpose.  Throughout all of the Counter-Defendant's actions described below, there was the intent to intimidate and cause fear in the Counterclaimant.  That is, at its very essence, the definition of conduct that alarms or seriously annoys in any normal sense.  However, the following paragraphs describe specific actions of the Counter-Defendant that meet the above legal criteria.

25. The volume of contact the Counter-Defendant directed at the Counterclaimant in the two months since obtaining the Counterclaimant's identify are a reason for extreme alarm, and were intend to annoy and alarm the Counterclaimant.  The Counter-Defendant has an

extensive history of abusive and anti-social behavior, and because of this, it is extremely alarming for the Counterclaimant to have received so many direct contacts from the Counter-Defendant, all within the first two months.  The table below lists the dates and times of contacts received by the Counterclaimant from the Counter-Defendant.  Contacts 8 through 19 occurred after the Counterclaimant expressly told the Counter-Defendant to cease and desist all contact (Exhibit I), all of which explicitly qualify as Harassment by law.

| Contact | Date | Approx. Time | Contact Type | Comments |
| --- | --- | --- | --- | --- |
| 1 | 06/30/15 | 1:58 PM | Phone Call | Message Left, Transcript at Exhibit G |
| 2 | 06/30/15 | 2:29 PM | Email | Exhibit A |
| 3 | 06/30/15 | 3:22 PM | Email | Repeat of  No. 2 |
| 4 | 06/30/15 | 7:52 PM | Email | Exhibit B |
| 5 | 06/30/15 | 7:55 PM | Phone Call | Message Left, Transcript at Exhibit G |
| 6 | 06/30/15 | 7:56 PM | Phone Call | No Message |
| 7 | 06/30/15 | 8:18 PM | Email | Exhibit H |
| N/A | 06/30/15 | 9:49 PM | No Contact Request | Exhibit I |
| 8 | 06/30/15 | 9:57 PM | Email | Exhibit J |
| 9 | 06/30/15 | 10:01 PM | Email | Repeat  of No. 8 |
| 10 | 06/30/15 | 11:07 PM | Email | Repeat  of No. 8 |
| 11 | 06/30/15 | 11:21 PM | Email | Repeat  of No. 8 |
| 12 | 07/01/15 | 10:50 AM | Email | Exhibit K |
| 13 | 07/21/15 | 10:30 AM | Email | Exhibit L |
| 14 | 07/21/15 | 10:35 AM | Email | Exhibit M |
| 15 | 07/21/15 | 6:10 PM | Email | Exhibit N |
| 16 | 07/22/15 | 8:47 AM | Email | Exhibit O |
| 17 | 07/22/15 | 8:59 AM | Email | Exhibit P |
| 18 | 07/22/15 | 9:28 AM | Email | Exhibit Q |
| 19 | 07/22/15 | 9:55 AM | Email | Exhibit R |

These contacts qualifies as harassment, as they meet the legal definition for the following reasons. First, it is a course of contact meant to annoy and alarm.  Second, the Counter-

Defendant was told to Cease and Desist contact on June 30th, 2015, and proceeded to contact the Counterclaimant another 12 times after that. Third, the contacts did not serve any legal purpose – some of the contacts, such as 14, 16, and 17 (Exhibits M, O, and P), are the Counter-Defendant attempting to taunt the Counterclaimant. In Contact number 8 (Exhibit J), the Counter-Defendant states that he is informing the Counterclaimant that he will be suing him – there is no legal requirement to do so, and this contact was just to alarm and annoy the Counterclaimant. Given the well documented history of improper and anti-social behavior by the Counter-Defendant, such contacts as listed would easily be cause for extreme alarm in any reasonable person. The Counter-Defendant has had five different court-ordered Peace Orders/Restraining Orders/No Contact Orders, in three different states, filed against him. The Counter-Defendant is regularly seen in the company of a convicted serial bomber. The Counter-Defendant is an adjudicated harasser. The Counter-Defendant has even published a literary work entitled "The Deranged Cyberstalker". With all of this as clear proof of Counter-Defendant's extreme anti-social behavior, having the Counter-Defendant turn his attention to the Counterclaimant caused extreme alarm and fear for his own personal safety and that of his family – that is plainly harassment.

26. While it was sent an hour before the actual "No Contact" request, the most egregious act in this regard committed by the Counter-Defendant was his email as shown in Exhibit C, which he sent to the Counterclaimant's wife's business, shortly after leaving a strange and threatening message on her home answering machine. The Counterclaimant's wife was, until that point, completely unaware of the Counter-Defendant and his history, and his contact of her was a malicious attempt to alarm the Counterclaimant by upsetting his wife, an uninvolved third party. The Counterclaimant's wife was, frankly, "freaked out" that a person she did not know, and had never even heard of before, would call her house several times

and then send her an email accusing her husband of tormenting someone.  The email was full of personal information such as names and locations, and contained images that were meant for her to recognize, which showed that this stranger had extensive knowledge and familiarity with her personal life.  In addition, the email contained bizarre and grotesque images of unknown dying and disfigured people, such that it would cause any normal person to become extremely alarmed at the intent and mental stability of the sender.  The Counterclaimant's wife immediately, and naturally, brought this email to the Counterclaimant's attention.  This contact qualifies as harassment for the following listed reasons. First, it was clearly meant to harass, alarm, and annoy the Counterclaimant – there was no other reason to contact the Counterclaimant's wife but to cause these feelings. Second, the Counter-Defendant has been told, and he himself has stated, that family members of Internet commenters should not be involved – he did not need to be told to not contact the Counterclaimant's wife; he has been told not to contact anyone's wife. Third, as the Counterclaimant's wife was not, and is not, involved in any legal matters with the Counter-Defendant, there was no legal purpose to contact her.

## DAMAGES

27. Copyright violations are normally limited to the profit or income derived from the improper use of the copyrighted works. Since there was no intent of financial gain or profit from these uses, damages are limited to statutory defined damages between $300 and $30,000 per work. As the intent for the use of these works was not benign, but was, in fact, malicious and nefarious, the Counterclaimant asks for the maximum damages allowed per work, for a total of $90,000. Any punitive damages for the copyright violations are left to a jury to determine.

28. For the three violations of Defamation, the Counterclaimant requests actual damages of $100,000 for each violation, for a total of $300,000.  Any punitive damages for the defamation causes are left to a jury to determine.

29. For the first violation of Harassment, in which the Counter-Defendant intentionally caused severe alarm and fear, the Counterclaimant would request actual damages of $100,000, and punitive damages as determined by the jury.

30. For the remaining violation, the Counterclaimant requests $250,000 in actual damages for the severe distress and alarm caused by the Counter-Defendant.  Attempting to sow discord and strife in a person's marriage is a particularly vile act, and the Counterclaimant is requesting $500,000 in punitive damages from the Counter-Defendant.

31. The total of all actual damages would be $740,000, requested punitive damages of $500,000, and such other punitive damages as award by a jury.

## PRAYER FOR RELIEF

32. WHEREFORE, the Defendant/Counterclaimant requests the following relief:

- A Jury Trial of all issues in the Counterclaim triable by a jury; and
- That this Court order Counter-Defendant to cease and desist all further defamatory comments and harassing contacts; and
- The court grant such actual and punitive damages as determined by a jury for the above claimed actions; and
- Costs and fees incurred in the prosecution of this action; and
- Any further relief as the Jury or this Court may deem appropriate and just.

DATED at Shirley, Massachusetts this 17th of August, 2015.

Scott Hinckley, *pro per*
31 Lawton Rd.
Shirley, MA 01464
(978) 425-4427
sjhinckley@comcast.net

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

WILLIAM M. SCHMALFELDT,                    )
                                           )
      Plaintiff,                           )
                                           )
vs.                                        )
                                           )    Civil Action No. 1:15-cv-01241-RDB
PATRICK G. GRADY, et al,                   )
                                           )
      Defendants.                          )
_____)

## CERTIFICATE OF SERVICE

      COMES NOW Scott Hinckley, *pro per*, a named but not yet served defendant in this case, having appeared specially and without conceding or waiving any right to include, without limit, any right of jurisdiction, venue, due process, or service of process, and by my signature affixed to this document below hereby certifies that, on the 17th day of August, 2015, I served a true and correct copy of  this Motion to Waive, Answer to Complaint, and Counterclaim, and this certificate of service filed with the court on Plaintiff to his residence address at 6636 Washington Blvd., Lot 71, Elkridge, MD 21075 by personally placing same in the First Class mail of the United States Postal Service with proper postage affixed.

      DATED at Shirley, Massachusetts, this 17th day of August, 2015.

                               Scott Hinckley, *pro per*
                               31 Lawton Rd.
                               Shirley, MA 01464
                               (978) 425-4427
                               sjhinckley@comcast.net